**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**November 4, 2003**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-50937
_____


CAROLYN BARNES, Individually and as Next Friend of William
Zimmer Barnes, a Minor, and Charles Austin Lee Bednorz, a
Minor

                              Plaintiff - Appellant

     v.

KEVIN RINDLER MADISON; ET AL

                              Defendants

KEVIN RINDLER MADISON; JOSEPH M OSWALD; BARBARA J THOMPSON;
ALAN THOMPSON; WILLIE RICHARDS; CITY OF ROUND ROCK TEXAS;
WILLIAMSON COUNTY, TEXAS; CITY OF CEDAR PARK; DUGGER,
Detective; MICHAEL P DAVIS

                              Defendants - Appellees

_____

Appeal from the United States District Court
for the Western District of Texas
No. A-01-CV-547-H
_____

Before KING, Chief Judge, and DAVIS and EMILIO M. GARZA, Circuit
Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

The plaintiff sued several local governments and their employees for violations of federal and state law arising out of an allegedly illegal arrest. The district court granted the defendants' motions for summary judgment and entered an order of sanctions against the plaintiff. The plaintiff now appeals. For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case began with a speeding ticket that plaintiff Carolyn Barnes received in Cedar Park, Texas. The speeding ticket, along with an accompanying citation for driving without proof of insurance, required Barnes to appear in Cedar Park's municipal court on or before April 5, 2000. Barnes claims that she entered a legally sufficient appearance in March 2000 by sending the court a request form for a defensive driving course. She also came to the court in person on April 5, but Cedar Park court employees informed her on that date that she must present her driving record in order to qualify for the defensive driving course. The employees suggested that Barnes return on April 7, and Barnes did return on that date with her driving record in hand. The court personnel then informed her, however, that she was ineligible to take the defensive driving course, because her driving record showed that she had already taken such a course within the previous year. Barnes was told that she could return on a later date to talk to a judge about resolving the matter,

2

but she declined.  Barnes instead wrote a letter to the municipal court explaining the situation and asking for help in resolving it.

Barbara Thompson, a clerk of the Cedar Park municipal court, sent Barnes a letter on April 10 directing Barnes to make an appearance within ten days.  According to Barnes, the letter was returned to the court on April 13 because it was sent to an old address.  In any case, the ticket remained outstanding, and on April 25 a warrant for Barnes's arrest was issued, with Officer Alan Thompson of the Cedar Park police acting as complaining witness.  The failure-to-appear warrant was not executed at that time.

Clerk Thompson sent Barnes another letter on May 15 that mentioned the warrant and directed Barnes to speak with one of the municipal court judges immediately.  Barnes says that she received the letter upon returning from vacation on May 29; until then, she had not been aware of the arrest warrant.  Upon reading the letter from the court, Barnes immediately wrote a letter to Clerk Thompson contending that she had in fact made a valid appearance in court and insisting that the arrest warrant was therefore improper.  Barnes's letter to the court, however, went well beyond expressing mere irritation at a perceived bureaucratic slip-up.  The letter concluded with the following passage:

I WILL FIGHT TO THE DEATH WITH ANYONE WHO TRIES TO PULL ME FROM MY HOME, MY CAR, OR MY WORKPLACE!!! I WILL NOT BE ARRESTED AND THROWN IN JAIL! WHOEVER DIES, THE BLOOD WILL BE ON YOUR HANDS!

. . .

I WILL NOT GO PEACEFULLY TO ANY JAIL, I WOULD RATHER DIE FIRST AND I WILL DIE FIGHTING FOR MY FREEDOM BECAUSE I HAVE NOT DONE ANYTHING FOR WHICH I DESERVE TO BE THROWN IN JAIL!

THIS MALICIOUS GOVERNMENTAL ACTIVITY AND ABUSE OF OUR TAX DOLLARS IS THE CAUSE OF THE INCREASE IN VIOLENCE IN OUR SOCIETY! THIS IS WHY PEOPLE BOMB GOVERNMENTAL OFFICES, KILL COPS, AND KILL JUDGES BECAUSE OF ALL THE LIES AND ABUSES!

. . .

IF I DO NOT HEAR FROM YOU WITHIN TEN DAYS THAT THIS FALSE AND MALICIOUS ARREST WARRANT HAS BEEN RECALLED AND IF I DO NOT RECEIVE THE PERSONAL WRITTEN ASSURANCE OF ALL YOUR JUDGES THAT I WILL NOT BE HARASSED, MOLESTED, DISTURBED, ARRESTED, OR JAILED WHEN I COME IN TO RESOLVE THIS MATTER, THEN I WILL ASSSUME [sic] THAT WE REALLY ARE AT WAR AND WILL ACT ACCORDINGLY. . . . I AM WILLING TO DIE IN DEFENSE OF THIS OUTRAGEOUS INJUSTICE, ARE YOU WILLING [to] DIE TO PROMOTE IT? IF I SEE ANY UNIFORMED PEOPLE COME NEAR MY FAMILY, I WILL NOT WAIT TO ASK QUESTIONS! I WILL DEFINITELY RESIST ARREST ANYTIME THERE IS A FALSE AND MALICIOUS ABUSE OF PROCESS!

Clerk Thompson perceived the letter as a threat against her, the court staff, and the municipal judges. She therefore turned the letter over to the Cedar Park Police Department, where a Sgt. Rackley determined that the letter constituted a "terroristic threat" under § 22.07 of the Texas Penal Code.[1] Officer Alan

---

[1] The statute provides, in part:

(a) A person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to:

4

Thompson signed a statement of facts for probable cause and presented it to Judge Joseph Oswalt of the Cedar Park municipal court.  Sitting as a magistrate, Judge Oswalt issued an arrest warrant on June 1.

Cedar Park police officers informed the City of Round Rock's police department of the situation, and Cedar Park Officer Deborah Dugger appears to have faxed them documents related to the warrant.  On June 12, Officer Alan Thompson of Cedar Park, accompanied by Round Rock police officers, went to Barnes's office in Round Rock to serve the warrant, but Barnes was apparently not present.  The next day, Round Rock police officers, including Officer Willie Richards, arrested Barnes at her Round Rock office.  Richards allegedly searched Barnes's purse and belongings; Richards admits that he searched Barnes's purse for weapons and keys with which to lock the office.

---

(1) cause a reaction of any type to his threat by an official or volunteer agency organized to deal with emergencies;
(2) place any person in fear of imminent serious bodily injury; or
(3) prevent or interrupt the occupation or use of a building; room; place of assembly; place to which the public has access; place of employment or occupation; aircraft, automobile, or other form of conveyance; or other public place; or
(4) cause impairment or interruption of public communications, public transportation, public water, gas, or power supply or other public service.

TEX. PENAL CODE ANN. § 22.07 (Vernon 2003).

Barnes was taken to the Williamson County jail for booking. She complains that she was denied food, water, and telephone calls during her approximately ten-hour stay, seven hours of which came after she had posted bail. She claims as well that jail employees misled two individuals who had come to give Barnes a ride home by telling the individuals that Barnes would not be released that night. She was eventually released around midnight and then began to walk home; during the walk she was allegedly further harassed and threatened by Williamson County officials. When she returned home, she says that her home, office, and vehicles had been ransacked; she blames Williamson County officials, since they held her keys during her incarceration. Barnes also claims that Williamson County employees harassed her son at school and sprayed his belongings with a chemical that would attract drug-sniffing dogs. This mistreatment, according to Barnes, is motivated in part by the county's desire to retaliate against her for a lawsuit she brought against it in state court several years earlier. Williamson County admits the basic facts surrounding Barnes's stay at the jail but denies her various claims of mistreatment.

On June 7, 2001, Barnes filed suit in state court against the following individuals and governmental entities: Cedar Park municipal judges Joseph Oswalt and Kevin Madison, Barbara Thompson of the Cedar Park municipal court clerk's office, Alan Thompson and Deborah Dugger of the Cedar Park Police Department,

6

and the City of Cedar Park (collectively, "Cedar Park

defendants"); the City of Round Rock and Willie Richards of the

Round Rock Police Department (collectively, "Round Rock

defendants"); and Williamson County.  Barnes's suit included

§ 1983 claims predicated on violations of several constitutional

provisions,[2] as well as a host of state law claims.[3]  Barnes

filed suit on her own behalf and as next friend of her two minor

children.  Barnes appeared <u>pro se</u> in the district court, as in

this court, but she is a licensed attorney.[4]

The case was removed to federal district court on August 21,

2001.  As suggested by the nearly two hundred entries on the

district court's docket sheet, the proceedings were marked by a

plethora of motions and disputes, many of which were referred to

the magistrate judge.  The court repeatedly ordered Barnes to

amend her long-but-vague complaint in order to bring it into

compliance with Rule 8's requirement that the averments be

"simple, concise, and direct."  <u>See</u> FED. R. CIV. P. 8(e)(1).  Each

---

[2]    Namely, Barnes asserts violations of the First, Fourth,
Fifth, Sixth, Eighth, and Fourteenth Amendments.

[3]    These include negligence, gross negligence, negligent
infliction of emotional distress, assault, battery, intentional
infliction of emotional distress, conspiracy, respondeat superior
liability, false arrest, false imprisonment, malicious
prosecution, abuse of process, trespass, conversion, false light
invasion of privacy, defamation, tortious interference with
familial relations, and claims under the Texas Tort Claims Act.

[4]    Since Barnes is an attorney, we do not construe her
pleadings with the lenience normally afforded <u>pro se</u> litigants.
<u>See</u> <u>Olivares v. Martin</u>, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977).

amended complaint maintained the character of its predecessors, generally growing longer each time.

Barnes's Third Amended Complaint added Michael Davis as a new defendant.[5] Davis was at the time Williamson County's attorney of record. The complaint accused Davis of faxing defamatory letters and, more generally, of playing a part in the other defendants' various abuses and conspiracies. A Fourth Amended Complaint came on November 30, 2001. Davis moved to dismiss the claims against him on March 21, 2002, and his motion was granted in part on May 24, 2002. On that same day, the district judge denied Barnes's motion to file a Fifth Amended Complaint and add new defendants.

The claims against all of the defendants were disposed of in the next two months. On June 11, 2002, the district court granted the Cedar Park and Round Rock defendants' motion for summary judgment on all claims, and it denied Barnes's motion for partial summary judgment.[6] The court granted summary judgment to the remaining defendants (Davis and Williamson County) on all remaining claims on July 22, 2002.

---

[5] Other new defendants were added as well, but they were dismissed from the case for lack of proper service.

[6] Barnes's motion, which had been filed on December 26, 2001, was denied as moot as to the Cedar Park and Round Rock defendants, given the court's grant of summary judgment in their favor. Barnes's motion was denied on the merits as to the remaining defendants.

Williamson County requested sanctions against Barnes in the amount of $8,764 for legal fees expended in connection with various motions and claims that the county described as completely frivolous.  In an order dated August 16, 2002, the district court granted them $799, limited to expenses caused by Barnes's failure to appear at her deposition.

Barnes now appeals the judgment below.  Her appellate brief raises a number of instances of alleged error, and it obliquely suggests many more.  Barnes asserts that the district court committed several errors of law in granting the defendants' motions for summary judgment.  In addition, Barnes also finds error in the lower court's administrative handling of her case, including its rulings on various motions.

## II.  STANDARD OF REVIEW

We review the district court's grant of summary judgment <u>de novo</u>, applying the same standard as the district court.  <u>See</u> <u>Vela v. City of Houston</u>, 276 F.3d 659, 666 (5th Cir. 2001).  Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  We view the evidence in the light most favorable to the non-movant, <u>see</u> <u>Coleman v. Houston Indep. Sch. Dist.</u>, 113 F.3d 528, 533 (5th Cir. 1997), but the non-movant must go beyond the pleadings and bring forward specific facts indicating a genuine issue for trial, <u>see</u> <u>Celotex</u>

9

<u>Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). If the non-movant fails to present facts sufficient to support an essential element of his or her claim, summary judgment should be granted. <u>See</u> <u>id.</u> at 322-23.

The district court's rulings on various matters relating to case management and discovery are, as a general matter, reviewed for abuse of discretion. <u>See, e.g.</u>, <u>Pierce v. Underwood</u>, 487 U.S. 552, 558 n.1 (1988); <u>McKethan v. Tex. Farm Bureau</u>, 996 F.2d 734, 738 (5th Cir. 1993). To the extent that this general standard of review applies differently with respect to different types of rulings, we will discuss the relevant variations as appropriate.

### III. DISCUSSION

As we have said, Barnes raises a number of issues on appeal. At one point, she states that she is appealing "all . . . claims as to all Appellees." Barnes cannot thereby succeed in giving us an open-ended mandate to review the whole course of the proceedings below. We review only those points of purported error that the appellant designates and actually argues; other issues are considered waived. <u>See</u> FED. R. APP. P. 28(a)(5), (9) (requiring that briefs designate issues for review and provide contentions, reasons, and citations); <u>Trevino v. Johnson</u>, 168 F.3d 173, 181 n.3 (5th Cir. 1999) (stating that inadequately

10

argued issues are waived).  Applying that rule, we find nine issues on appeal.

The district court's grant of summary judgment to the defendants rested in large part on Barnes's failure to plead her claims properly and support her allegations with competent summary judgment evidence.  Barnes argues that she was unable to meet those demands because of the court's handling of the case.  We therefore begin by reviewing those procedural rulings of the district court that Barnes argues thwarted her ability to make out her case.  We then turn to her several points of error that address substantive legal questions related to the grant of summary judgment.  Last, we consider the district court's sanctions order.

## A.    Amendment of Pleadings

Barnes had repeatedly been given leave to amend her pleadings.  On April 15, 2002, she requested leave to file a Fifth Amended Complaint that would add claims involving new events and defendants.  The district court denied this request by order dated May 24, 2002.  Barnes argues that the district court abused its discretion in doing so.

Although the general rule is that leave to amend pleadings should be freely granted when justice requires, see FED. R. CIV. P. 15(a), in this case Barnes was also required to show "good cause" why her request should be granted, because her request

11

came after the scheduling order's January 27 deadline for amendments. See FED. R. CIV. P. 16(b) (providing that a scheduling order "shall not be modified except upon a showing of good cause"); S&W Enters. v. SouthTrust Bank of Ala., 315 F.3d 533, 536 (5th Cir. 2003) (stating that "Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired. Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave.").[7] Having assumed that Barnes could show good cause under Rule 16(b), the district court nonetheless found that Barnes's request to amend should be denied.

The district court did not abuse its discretion in denying Barnes's request. Even if we assume, as did the district court, that Barnes can overcome the hurdle of Rule 16(b), her request did not satisfy the requirements of Rule 15(a). While Rule 15(a) provides a rather liberal standard for granting leave to amend,

---

[7]     Barnes points out that she had previously moved for leave to amend on December 5, 2001, before the scheduling order's deadline. The December 5 motion was not accompanied by a proposed amended complaint, nor did it describe when she wished to file one. Rather, the motion prayed generally for leave to file an indeterminate number of "further amendments" at unspecified future dates when "Plaintiffs have adequate time to accomplish this task and as discovery develops." The district court did not abuse its discretion in denying this extraordinary open-ended request. The district court's decision was justified by the same considerations that, as we explain in the text, justified the denial of Barnes's more conventional April 15 motion for leave to amend.

12

it has long been recognized that certain factors weigh against granting leave.  These factors include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  Foman v. Davis, 371 U.S. 178, 182 (1962).  The district court found that several of these factors were present, and we find that its determination is amply supported by the record.  For example, we note that Barnes's previous amended complaints did not comport with the district judge's instructions to streamline and clarify her averments.  On the contrary, the amended complaints continued to make conclusory allegations and refer to extraneous matters. Barnes's motion for leave to amend suggested that further amendments would be necessary as discovery revealed more defendants and further wrongs.  Given the risk of an unending stream of unsatisfactory amendments, we conclude that the district court did not abuse its discretion in finally calling a halt to the amendment process.

**B.   Discovery Issues**

Barnes has strenuously contended that her efforts at discovery were continually thwarted by the defendants and the magistrate judge.[8]  To the extent that many of her complaints are

---

[8]     Barnes complains that most of the discovery matters were referred to the magistrate judge rather than handled

13

directed toward the defendants' conduct, we are not the proper audience.  The defendants may have been recalcitrant and stingy in discovery; if so, Barnes had the option of seeking court orders compelling discovery.  See FED. R. CIV. P. 37(a).  To the extent that her arguments are directed against the court's rulings on discovery matters, we review those rulings for abuse of discretion, bearing in mind that the trial court enjoys broad latitude in supervising the conduct of discovery.  See McKethan v. Tex. Farm Bureau, 996 F.2d 734, 738 (5th Cir. 1993); Landry v. Air Line Pilots Ass'n Int'l, 901 F.2d 404, 436 & n.114 (5th Cir. 1990).

Barnes's argument on appeal does not so much focus on errors in particular discovery rulings but instead attacks the court's general pattern of refusing to help her achieve meaningful discovery.  Fairly early in the proceedings, the magistrate judge granted the defendants a temporary protective order against Barnes's discovery requests.  His stated reason for doing so was that the parties had not yet engaged in a discovery conference; Rule 26(d) provides that parties cannot seek discovery until such a conference has occurred.  See FED. R. CIV. P. 26(d), (f).  Barnes has not identified any error in this ruling.  The case then proceeded for the next several months with relatively little

personally by the district judge.  The procedure used below was proper, however, for such matters can be referred to the magistrate judge without the permission of the parties.  See 28 U.S.C. § 636(b)(1) (2000).

14

activity on the discovery front.  It was only in the last days leading up to the May 27, 2002, discovery deadline that Barnes began to press the issue with a motion to compel, despite the fact that Barnes had received the defendants' objections to her discovery requests months earlier.  The magistrate judge denied Barnes's motion to compel in almost every respect.  Since many of her discovery requests were facially overbroad and irrelevant, we see no abuse of discretion in this decision.  Given Barnes's delay in seeking the court's assistance in compelling discovery, we do not accept her argument that the magistrate judge can be blamed for the difficulties she encountered in trying to gather evidence before the close of discovery.

## C.   Delay in Ruling on Barnes's Motion for Partial Summary Judgment

Barnes moved for partial summary judgment on December 26, 2001.  The district court did not rule on her motion until June 11, 2002, on which date the court granted summary judgment to the Cedar Park and Round Rock defendants, who had moved for summary judgment on March 1, 2002.  The district court denied Barnes's motion as moot with respect to the Cedar Park and Round Rock defendants and denied it on the merits as to the remaining defendants (Davis and Williamson County).

Barnes argues that the district court erred in delaying its ruling and that the delay impeded her ability to conduct discovery.  The defendants had resisted many of her discovery

requests by claiming immunity, Barnes explains, and so she sought partial summary judgment in order to resolve that issue early in the proceedings.  Barnes asserts that because the district court did not rule on her motion for partial summary judgment in a timely fashion, the defendants continued to resist discovery and thwart her efforts to gather evidence with which to respond to the defendants' own subsequent motions for summary judgment.[9]

We do not believe that the district court's delay was an abuse of discretion.  We have often remarked that the district court enjoys a broad latitude over matters such as case management and scheduling.  See, e.g., United States v. Hughey, 147 F.3d 423, 431 (5th Cir. 1998); Guillory v. Domtar Indus., 95 F.3d 1320, 1328-29 (5th Cir. 1996).  The timing of the court's ruling on a motion can in some rare cases amount to an abuse of discretion, but only if the district court's timing prejudices a party.  See, e.g., Prudhomme v. Tenneco Oil Co., 955 F.2d 390, 393-96 (5th Cir. 1992) (holding that the district court abused its discretion when it decided on the morning of trial to allow the plaintiff to pursue a new theory of recovery when the defendant had relied on the court's earlier dismissal of an attempt to add that theory).

---

[9]     As we have already explained, Barnes had open to her at all times the option of using motions to compel, but it was not until very late in the proceedings that she used that option.

In this case, we cannot say that Barnes was prejudiced by the district court's delay in ruling on her motion for partial summary judgment. With respect to most of the issues on which Barnes sought summary judgment, it is not clear how a favorable decision would have advanced her objectives. For example, Barnes asked for summary judgment on the question of whether she had made an adequate appearance in the municipal court on her traffic ticket. She has repeatedly sought vindication on this issue, but in truth it is not central to the case. The defendant officials can still enjoy qualified immunity from Barnes's suit even if the court staff incorrectly believed that Barnes had failed to appear. Of the issues on which she sought summary judgment, the only one that is arguably related to an immunity defense is her request for summary judgment on whether the defendants had "no legal basis, factual basis, or jurisdictional basis" to arrest her. To the extent that this issue was material to her claims, the district court simply rejected Barnes's position for the reasons set out in its June 11, 2002, decision granting summary judgment to the Cedar Park and Round Rock defendants. Thus, it cannot be said that Barnes's case was harmed by the district court's delay in ruling on her motion.

We turn now to those points of error that go to the substance of the district court's summary judgment rulings.

**D.    Free Speech**

17

Barnes claims that her May 29, 2000, letter to the Cedar Park municipal court was speech protected by the First Amendment to the United States Constitution and the cognate provision of the Texas Constitution. The court staff, in contrast, viewed the letter as a threat against them, and Barnes was eventually arrested for making a terroristic threat in violation of Texas Penal Code § 22.07. The governmental reaction to the letter, says Barnes, violated her right to free speech. Moreover, since the letter was constitutionally protected, the arrest warrant, her subsequent arrest, and her temporary confinement in jail were all illegal.

The district court took care to explain that the various defendants who responded to Barnes's letter were shielded by immunity. First, absolute immunity cloaks Judge Oswalt, who, sitting as magistrate, signed the arrest warrant and set Barnes's bond. Since these are acts of the type normally performed by judges, they are judicial acts shielded by absolute judicial immunity from liability under both federal and state law. See Stump v. Sparkman, 435 U.S. 349, 362 (1978); Boyd v. Biggers, 31 F.3d 279, 284-85 (5th Cir. 1994); Turner v. Pruitt, 342 S.W.2d 422, 423 (Tex. 1961); Garza v. Morales, 923 S.W.2d 800, 802 (Tex. App.--Corpus Christi 1996, no writ). This judicial immunity also extends to other defendants, such as Clerk Thompson, to the

18

extent that they were acting at the judge's direction.  <u>Tarter v. Hury</u>, 646 F.2d 1010, 1013 (5th Cir. 1981).[10]

All of the other officials in this suit are entitled to assert the defense of qualified immunity.  With respect to federal claims under § 1983, this means that they cannot be held liable unless their conduct was objectively unreasonable in light of clearly established law.  <u>See</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>Hare v. City of Corinth</u>, 135 F.3d 320, 325 (5th Cir. 1998).  Under Texas law, which is in relevant respects similar, officials are immune as long as their actions are consistent with what reasonably prudent officials could have believed was appropriate at the time.  <u>See</u> <u>City of Lancaster v. Chambers</u>, 883 S.W.2d 650, 655-57 (Tex. 1994).

On appeal, Barnes argues that no reasonable official could fail to realize that her letter was protected speech.  Although Barnes does not completely spell out the argument, this is presumably meant as an attack upon the qualified immunity defense applicable to some of the defendants.  If that is her argument, we must disagree with her.  A reasonable official could believe that Barnes had violated the terroristic threat statute.  The statute is violated if a person threatens violence to another with the intent to: 1) provoke a reaction by emergency agencies,

---

[10]    Barnes suggests that judicial immunity is not available in this case because the municipal court lacked all jurisdiction over the crime of making a terroristic threat.  This issue is discussed <u>infra</u> in Part III.E.

19

2) place a person in fear of imminent bodily injury, 3) interrupt the use of a building, or 4) interrupt public services. TEX. PENAL CODE ANN. § 22.07. The requisite intent can be inferred from the acts and words of the speaker. Cook v. State, 940 S.W.2d 344, 347 (Tex. App.--Amarillo 1997, pet ref'd). Regardless of Barnes's true intent, a reasonable official who read her May 29 letter could have concluded that Barnes intended to create a fear of imminent bodily harm when Barnes asked whether the court employees were "WILLING [to] DIE" for not recalling the failure-to-appear warrant; the same reaction might reasonably follow from reading that Barnes would consider herself "AT WAR AND WILL ACT ACCORDINGLY." Likewise, there was reasonable cause to perceive an intent to put law enforcement officers into fear of imminent harm if they tried to serve Barnes with the failure-to-appear warrant: "I WILL FIGHT TO THE DEATH WITH ANYONE WHO TRIES TO PULL ME FROM MY HOME, MY CAR, OR MY WORKPLACE!!! . . . IF I SEE ANY UNIFORMED PEOPLE COME NEAR MY FAMILY, I WILL NOT WAIT TO ASK QUESTIONS!" That these threats are for the most part conditional--that is, predicated upon the officials engaging in a certain course of conduct--does not mean that they necessarily lack the imminence required under the statute. See id. at 347-49. Whether or not Barnes actually had the intent necessary to support a conviction under the statute, we cannot say that those who read her letter reacted unreasonably in referring the matter to the police and securing an arrest warrant.

20

The terroristic threat statute has not been held unconstitutional by any court, nor does it suffer from obvious facial unconstitutionality.  Reasonable officials are therefore entitled to rely upon its validity without subjecting themselves to liability in damages.  See Vela v. White, 703 F.2d 147, 152-53 (5th Cir. 1983) (per curiam) (finding that qualified immunity was proper where officials enforced a statute that had not been declared unconstitutional); see also Dittman v. California, 191 F.3d 1020, 1027 (9th Cir. 1999); Swanson v. Powers, 937 F.2d 965, 969 (4th Cir. 1991).

**E.    The Municipal Court's Jurisdiction**

Barnes argues that the Cedar Park municipal court had no jurisdiction to pursue the terroristic threat charge.  According to the Texas statutes, the jurisdiction of the municipal courts does not extend to criminal cases involving offenses punishable by imprisonment.  See TEX. GOV'T CODE ANN. § 29.003 (Vernon 1988 & Supp. 2003).  Violation of the terroristic threat statute is, depending upon which subsection is violated, at least a Class B misdemeanor, see TEX. PENAL CODE ANN. § 22.07(b), which means that it is potentially punishable by imprisonment, see id. § 12.22.  Thus, a terroristic threat charge apparently could not be prosecuted in the Cedar Park municipal court.

21

Barnes was not prosecuted in the municipal court, nor indeed was she ever prosecuted at all.[11] Thus, it is not immediately clear why the jurisdiction of the municipal court is at all relevant. We take Barnes to suggest that the court's jurisdiction is relevant to the availability of the absolute judicial immunity claimed by some of the defendants. As the Supreme Court has said, judicial immunity does not shield otherwise "judicial" acts that are "taken in the complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 12 (1991) (per curiam).

We believe that Barnes's arguments concerning the municipal court's jurisdiction conflate two separate questions. The fact that the municipal court does not have jurisdiction to hear a prosecution for a violation of the terroristic threat statute does not mean that the court's judges, who are also designated as magistrates under Texas law, have no power as magistrates to issue an arrest warrant for such an offense. Indeed, Texas law suggests the opposite, for magistrates have the power and duty to issue such process. See TEX. CODE CRIM. PROC. ANN. arts. 2.09, 2.10, 6.02, 7.01, 15.03 (Vernon 1977 & Supp. 2003). We thus find

---

[11] Barnes at one point suggests that the absence of an indictment or information means that her arrest was illegal and without all jurisdiction. This is not correct, for an arrest requires only a warrant or probable cause. The case cited by Barnes explains that proper charging instruments are necessary to confer jurisdiction to try a criminal case, not to effect an arrest. See Cook v. State, 902 S.W.2d 471 (Tex. Crim. App. 1995).

Barnes's arguments relating to the municipal court's jurisdiction to be without merit.

**F.    Illegal Search and Arrest**

Barnes's complaint alleged that her arrest on June 13, 2000, was illegal in that Officer Richards did not possess a valid arrest warrant; moreover, she claims, he conducted a search of her office and effects without a search warrant. The district court found that there could be no liability for the arrest because Officer Richards had acted pursuant to a facially valid arrest warrant. As to the alleged illegal search, the court found that Barnes had offered no competent summary judgment evidence to overcome Officer Richards's sworn denials. On appeal, Barnes repeats her assertions of illegality.

We agree with the district court's analysis. Viewing the summary judgment evidence in the light most favorable to Barnes, the most the evidence shows is that Officer Richards lacked the actual arrest warrant but instead had received a faxed copy of documents from the Cedar Park police indicating that Cedar Park held a warrant for Barnes's arrest. Contrary to Barnes's suggestions, there is no requirement that an officer possess the actual warrant; an arrest is legal if the officer acts under the authority of a warrant of which he or she has reliable knowledge. See United States v. McDonald, 606 F.2d 552, 553-54 (5th Cir. 1979) (per curiam); see also Case v. Kitsap County Sheriff's

<u>Dep't</u>, 249 F.3d 921, 930 (9th Cir. 2001). Texas law specifically provides that the arresting officer need not have the warrant in his possession. <u>See</u> TEX. CODE CRIM. PROC. ANN. art. 15.26; <u>Cook v. State</u>, 470 S.W.2d 898, 899 (Tex. Crim. App. 1971). There is no genuine dispute over the warrant's apparent validity.

As to Barnes's allegations that Officer Richards (and possibly unnamed others) engaged in illegal searches and ransacked her home, office, and vehicles, we agree with the district court that Barnes failed to demonstrate the existence of triable material facts. Officer Richards's affidavit, appended to his motion for summary judgment, denied conducting such searches, except for looking in Barnes's purse at the time of arrest. Once Richards satisfied his initial burden of showing the absence of any genuine issue of material fact, Barnes could survive summary judgment only by designating specific facts in the record that would create genuine issues for trial. <u>Celotex</u>, 477 U.S. at 324. Barnes did not produce such specific record facts. Her affidavit does state, without elaboration, that Officer Richards searched her person, belongings, and surroundings at the time she was arrested. Although the absence of detail makes it difficult to reach a firm conclusion, the search she seems to describe would appear to be legal. <u>See</u> <u>United States v. Johnson</u>, 846 F.2d 279, 281-84 (5th Cir. 1988) (permitting the warrantless search of a closed briefcase incident to arrest). There are of course important limitations on the

24

proper scope of a search incident to an arrest, but Barnes's evidence, if credited, does not provide any details that would give us a basis to say that those bounds were overstepped. As to her allegations that more expansive (and clearly illegal) searches and ransacking took place while she was incarcerated, her only evidence is her affidavit's reassertion of the vague allegations contained in her complaint.[12] Such vague and conclusory assertions cannot defeat a properly supported motion for summary judgment. Bridgmon v. Array Sys. Corp., 325 F.3d 572, 577 (5th Cir. 2003).

## G. Detention in Williamson County Jail

Barnes asserts that she was kept in jail for seven hours after she posted bond and that Williamson County officials subjected her to abuse during and after her detention. These events serve as the predicate for several of her federal and state claims.

None of the employees responsible for these particular acts of asserted misconduct has been named as a defendant in this

---

[12] Her affidavit's most detailed account of the matter would appear to be the following statement: "During my incarceration, my home and vehicles were also searched and ransacked. These defendants clearly took advantage of the illegal incarceration to conduct an illegal search. This is perhaps why I was wrongfully and illegally detained for an additional seven hours after my bond was posted and my magistrate warning waived." The reader is left in the dark as to the personal knowledge, if any, that supports Barnes's belief.

25

case;[13] only the county is a defendant.  The district court granted the county's motion for summary judgment as to all claims.  With respect to Barnes's claims under § 1983, the district court first pointed out that the county cannot be held liable on a theory of respondeat superior; instead, it is liable only for wrongs attributable to official policy.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-95 (1978); Gonzalez v. Ysleta Indep. Sch. Dist., 996 F.2d 745, 753-54 (5th Cir. 1993).  The district court then concluded that Barnes had not presented any competent evidence that her alleged injuries had been the result of an official policy or custom.

With regard to Barnes's state law claims, the district court pointed out that local government entities enjoy immunity under Texas law except to the extent that the state legislature has expressly waived it.  See Guillory v. Port of Houston Auth., 845 S.W.2d 812, 813 (Tex. 1993).  In enacting the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001-.109 (Vernon 1997 & Supp. 2003), the legislature effected a limited waiver of immunity.  This waiver does not, however, extend to intentional torts.  See id. § 101.057; City of Hempstead v. Kmiec, 902 S.W.2d 118, 122 (Tex. App.--Houston [1st Dist.], 1995, no writ).  While

---

[13]  Some employees of Williamson County were dismissed from the suit for lack of proper service of process.  Barnes sought to add other Williamson County employees in her Fifth Amended Complaint, but, as discussed above, the district court denied her request to do so.

26

some of the many causes of action listed in Barnes's complaint announce themselves as negligence claims, the harms she suffered at the hands of Williamson County's employees--illegal detention and harassment--are in fact claims sounding in intentional tort. The district court pointed out that a plaintiff cannot avoid the bar of governmental immunity simply by describing essentially intentional conduct as an act of negligence. See Tex. Dep't of Pub. Safety v. Petta, 44 S.W.3d 575, 580 (Tex. 2001); Holland v. City of Houston, 41 F. Supp. 2d 678, 712-13 (S.D. Tex. 1999).

In the section of her appellate brief devoted to this topic, Barnes recites the factual allegations relating to her detention and then declares that the district court erred in granting Williamson County's motion for summary judgment. She does not, however, identify how the district court might have erred. Nor does she direct us to any summary judgment evidence that would produce a genuine issue of material fact necessitating resolution at trial. Barnes's inadequate presentation of the argument could properly be held to effect a waiver of the issue. See FED. R. APP. P. 28(a)(9) (requiring that an argument contain "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); Jason D.W. v. Houston Indep. Sch. Dist., 158 F.3d 205, 210 n.4 (5th Cir. 1998).

Nonetheless, we have conducted our own review of Williamson County's motion for summary judgment and Barnes's response,

27

together with the evidence provided in support of each.  We conclude that Barnes did not produce evidence sufficient to withstand Williamson County's motion for summary judgment.  In particular, regarding her federal claims, Barnes failed to show that the wrongs she allegedly suffered were the result of county policy.  Her affidavit includes assertions that the county maintains illegal policies, but such conclusory statements are insufficient to withstand summary judgment.  See Spiller v. City of Texas City, Police Dep't, 130 F.3d 162, 167 (5th Cir. 1997).  Barnes's most probative evidence was an affidavit from a former Williamson County sheriff's deputy, which details some of the department's inner workings.  Viewing the affidavit in the proper summary judgment light, it paints a dim portrait of the department and arguably evinces the existence (or at least former existence) of several malign informal practices.  The affidavit does not, however, reveal any personal knowledge of the existence of policies that bear on the harms suffered by Barnes.  Indeed, the closing paragraphs of the affidavit suggest that the particular wrongs identified by Barnes--being held without a valid warrant, being held after posting bond, and so forth--would violate department policy.  In sum, we agree with the district court that Barnes did not produce specific and competent evidence that would create a genuine issue of fact with respect to crucial elements of her federal claims.

Turning to Barnes's state claims, her response to Williamson County's motion for summary judgment did not explain how her claims could survive, given that the Texas Tort Claims Act does not waive governmental immunity for officials' intentional torts. See TEX. CIV. PRAC. & REM. CODE ANN. § 101.057. We agree with the district court that the facts surrounding Barnes's claims against Williamson County sound in intentional tort. Since Barnes does not allege any conduct that is factually distinct from the conduct that supports the intentional tort claims, the fact that her complaint includes generalized allegations of negligence on the part of all defendants is insufficient to avoid Williamson's immunity defense. See Petta, 44 S.W.3d at 580.

## H. Defamation Claims Against Davis

While Barnes wishes to mount a general appeal of all aspects of the district court's grant of defendant Davis's motion for summary judgment, the only issue actually argued in her brief is her defamation claim. Accordingly, this is the only point we shall address.

Barnes's complaint contains some general allegations that Davis (along with others) published defamatory material to various unspecified persons at various unspecified times; the most specific allegation relating to the defamation claim is that Davis sent defamatory letters or faxes to Barnes's office in the fall of 2000. Davis moved for summary judgment, claiming that

29

Barnes had no evidence that any defamatory statements were published to third parties; Davis claimed, moreover, that any defamatory statements were privileged by virtue of being made in connection with judicial proceedings then pending in the state court. (As we noted earlier, Barnes had sued Williamson County before, and Davis has at various times represented the county and its employees.)

Barnes's response to Davis's motion for summary judgment failed even to identify the particular document(s) or statement(s) alleged to be defamatory. This failure to identify the factual basis of her claim would itself have justified granting Davis's motion for summary judgment. See Celotex, 477 U.S. at 322-23. By examining the materials appended to Davis's motion for summary judgment, we believe we have been able to identify the statements that Barnes believes are defamatory. The possibly defamatory items consist of several letters that Davis faxed or mailed to Barnes's office in the fall of 2000 in connection with her state suit against Williamson County. Some of these letters were apparently copied to other persons involved in the case, including the judge. Barnes claims that the letters to her office were viewed by her office staff, but she did not provide names of any employees or offer affidavits from them.

The possibly defamatory items express Davis's view that, based upon her conduct, Barnes may be mentally disturbed.[14]

The district court granted Davis's motion for summary judgment, noting first that Barnes had failed even to identify Davis's allegedly defamatory language. After assuming for the sake of argument that Davis had sent defamatory material to Barnes's office, the district court found no evidence of publication to a third party. If Barnes's employees had seen the letters, the court remarked, it would have been a simple matter to prove it with an affidavit from one of them.

Barnes argues on appeal that there was sufficient evidence of publication, inasmuch as the letters indicate on their face (in the "cc:" field) that they were copied to third parties. Assuming that there was adequate evidence of publication, Barnes's claim still fails. Under Texas law, statements made in the course of judicial proceedings are absolutely privileged from

---

[14]    Davis also expresses this view in a letter to the state bar disciplinary committee in connection with a grievance that Barnes had filed against him. It is not clear that this item falls within the allegations in Barnes's complaint, as it was sent in February 2001. The only remotely specific allegations in Barnes's complaint refer to letters sent to her office in the fall of 2000. Barnes has, however, alluded at times to Davis's conduct in the grievance proceedings. Even if we assume that this letter is properly a part of the case, any defamation claims based upon it must fail because of the absolute privilege that shields all statements made in judicial and quasi-judicial proceedings. Proceedings before the state bar's grievance committee have been held to qualify for that absolute privilege. See Odeneal v. Wofford, 668 S.W.2d 819, 820 (Tex. App.--Dallas, 1984, writ ref'd n.r.e.).

31

defamation liability, regardless of the negligence or even malice with which they are made.  See, e.g., James v. Brown, 637 S.W.2d 914, 916 (Tex. 1982).  The privilege extends even to communications made by an attorney to persons who are not directly involved in the proceedings, as long as the communications are related to the attorney's representation of a client in pending or proposed judicial proceedings.  See Watson v. Kaminski, 51 S.W.3d 825, 827 (Tex. App.--Houston [1st Dist.] 2001, no pet.); Thomas v. Bracey, 940 S.W.2d 340, 342-44 (Tex. App.--San Antonio 1997, no writ).  This privilege was one basis of Davis's motion for summary judgment.  There does not appear to be any indication--and Barnes certainly presented no competent summary judgment evidence--that the privilege does not cover the statements at issue here, which were made in relation to then-pending litigation.

## I.   Sanctions Order

Williamson County sought sanctions of over $8,000 for expenses incurred in responding to various motions and in connection with Barnes's failure to appear at her duly noticed deposition on May 20, 2002.  In an order dated August 16, 2002, the district judge awarded sanctions in the amount of $799, which he found to be a reasonable estimate of the expenses directly caused by Barnes's failure to appear at her deposition.  The

32

court denied Williamson County's motion for sanctions in all other respects.

Barnes complains of both the procedure and the resulting order. Barnes had filed a forty-page response to the motion for sanctions, accompanied by a motion to exceed the usual page limits. The district court denied the motion to exceed the page limits and ordered Barnes to file a ten-page response to the motion for sanctions. Barnes asserts on appeal that she never received notice of that order, and thus she did not know that her original, lengthy response had been rejected. This, she suggests, violated due process. Yet Barnes's assertion that she was not given notice of the rejection of her original response is impossible for us to verify. In any event, it is the type of argument that should have been made in the first instance to the district court, such as in a motion to reconsider.[15]

If a party fails to attend a deposition, the court "shall" order that party to pay the opposing party's expenses unless the failure to attend was "substantially justified." FED. R. CIV. P. 37(d). In explaining that Barnes's failure to appear was not

---

[15]    Barnes repeatedly points out that the district judge and magistrate judge decided many motions, including the motion for sanctions, without holding a live hearing. But due process requires only a meaningful opportunity to present one's position, and there is no requirement to hold a live hearing on the types of motions that the lower court decided on the papers. See, e.g., Fahle v. Cornyn, 231 F.3d 193, 196 (5th Cir. 2000); Merriman v. Sec. Ins. Co. of Hartford, 100 F.3d 1187, 1191-92 (5th Cir. 1996).

substantially justified, the district court noted, among other factors, that she had not filed a motion for a protective order. Barnes argues vigorously on appeal that she had in fact filed a motion for a protective order before the deposition. From our review of the docket and the record, it indeed appears that she had filed, on May 17, a combined motion to quash and motion for a protective order. Nonetheless, the mere act of filing a motion for a protective order does not relieve a party of the duty to appear; the party is obliged to appear until some order of the court excuses attendance. See King v. Fidelity Nat'l Bank of Baton Rouge, 712 F.2d 188, 191 (5th Cir. 1983) (per curiam); Hepperle v. Johnston, 590 F.2d 609, 613 (5th Cir. 1979); Goodwin v. City of Boston, 118 F.R.D. 297, 298 (D. Mass. 1988). Barnes had received notice of the deposition on May 8, yet she did not file her motion for a protective order until May 17, the Friday preceding her Monday morning deposition. Given the timing, Barnes could hardly have expected in good faith to receive a court order excusing her attendance. Therefore, we cannot say that the district court abused its discretion in finding that Barnes's failure to appear was not substantially justified.

## IV.  CONCLUSION

For the foregoing reasons, the district court's judgment and order of sanctions are AFFIRMED. Appellees' motion to file a brief in response to Barnes's reply brief is DENIED as moot.

34