Teresa RANGEL, et al., Plaintiffs,

v.

Plutarco GONZALEZ MASCORRO,
et al., Defendants.

Civil Action No. L–10–104.

United States District Court,
S.D. Texas,
Laredo Division.

April 11, 2011.

Michael R. Cowen, The Cowen Law Group, P.C., Amber L. Medina, Attorney at Law, Brownsville, TX, for Plaintiffs.

Larry J. Goldman, Goldman Pennebaker Phipps PC, San Antonio, TX, for Defendants.

### MEMORANDUM AND ORDER

J. SCOTT HACKER, United States Magistrate Judge.

Pending before the Court is "Defendants' Opposed Motion for Sanctions, Opposed Motion for Extension of Time to Designate Defendants' Expert/Discovery Deadline, and Opposed Motion for Continuance and Briefs in Support" (Dkt. No. 17). Also pending before the Court is "Plaintiffs' Motion to Compel the Depositions of Defendants" (Dkt. No. 19), a related motion. The parties' dispute began when Plaintiffs' counsel instructed Plaintiff Teresa Rangel not to answer certain questions at her deposition. Thereafter, Plaintiffs' counsel terminated Plaintiff Rangel's deposition, and she subsequently cancelled Plaintiff Diego Batalla's deposition. According to Plaintiffs' counsel, her actions were justified because Defendants' counsel was conducting Plaintiff Rangel's deposition in an abusive manner. Defendants' counsel then cancelled his clients' depositions, which were scheduled to take place the next day. In their Motion, Defendants seek $3,500.00 in sanctions against Plaintiffs' counsel for her actions. Although Plaintiffs claim they are not seeking sanctions for Defendants' cancellations, they are seeking an offset of the expenses they have incurred as a result of Defendants' counsel's conduct. Further, Plaintiffs ask the Court to compel Defendants' appearance for the two previously-cancelled depositions.

On March 9, 2011, the Court ordered Plaintiffs' counsel to submit an audio recording of Plaintiff Rangel's deposition to the Court. (Dkt. No. 25). On March 17, 2011, the Court held a hearing in this matter. At the hearing, Defendants asked the Court to make a specific ruling on the questions Plain-

tiff Rangel was instructed not to answer. For the reasons set forth below, Defendants' Motion (Dkt. No. 17) is GRANTED IN PART AND DENIED IN PART, and Plaintiffs' Motion (Dkt. No. 19) is DENIED AS MOOT WITHOUT PREJUDICE.

## I. BACKGROUND

Plaintiffs Rangel and Batalla filed suit against Defendants Plutarco Gonzalez Mascorro, PGM Trucking, Inc., and Gilberto Gomez for injuries they allegedly sustained from an auto collision in April 2009. (*See* Dkt. No. 2, Ex. 1 at pg. 5). Plaintiff Rangel's deposition was scheduled to take place on February 16, 2011 at 10:30 a.m. in Laredo, Texas, with Plaintiff Batalla's deposition to follow at 1:00 p.m. that same day. (*See* Dkt. No. 17, Ex. A and B). The depositions of Defendant Gomez and a corporate representative of Defendant PGM Trucking were scheduled to take place the following day, and Mr. Larry Goldman, Defendants' lead counsel, was scheduled to meet with Defendants on the evening of February 16, 2011 for a pre-deposition conference. (*See id.* at ¶ 12).

On February 16, 2011, Mr. Goldman appeared on Defendants' behalf to depose Plaintiffs. (*See* Dkt. No. 17, Ex. D). Plaintiffs were represented by Ms. Lucia Ceaser. (*See* Dkt. No. 21, Ex. 7). At approximately 10:36 a.m., Mr. Goldman began the deposition of Plaintiff Rangel by asking general background questions. (*See* Dkt. No. 17, Ex. D, Attach. A). It appears to the Court that Mr. Goldman, Ms. Ceaser, and Plaintiff Rangel continued with the deposition in a cordial manner. (*See generally* Dkt. No. 26, Audio of Plaintiff Rangel's Deposition).

However, after approximately fifty minutes of questioning, the tone of the deposition changed. (*See* Dkt. No. 26, Audio of Plaintiff Rangel's Deposition at 50:40). Mr. Goldman asked Plaintiff Rangel how she obtained her healthcare provider's name. (*See* Dkt. No. 17, Ex. D., Attach. A at pg. 52). Ms. Ceaser objected on the basis that the information

was not relevant and instructed Plaintiff Rangel not to answer the question. (*See id.* at pg. 52–53). Mr. Goldman advised Ms. Ceaser that she may want to consider consulting with Mr. Michael Cowen, Plaintiffs' lead counsel, because the information he was seeking was "certainly discoverable." (*See id.* at pg. 53). After a brief exchange between Mr. Goldman and Ms. Ceaser, Mr. Goldman proceeded to ask Plaintiff Rangel if she consulted with a lawyer prior to her visit with her health care provider. (*See id.* at pg. 53–54). During that question, Ms. Ceaser interrupted Mr. Goldman, objecting to his question. (*See id.*). In a firm tone and raised voice, Mr. Goldman asked Ms. Ceaser to let him finish his question before she made her objection. (*See id.;* Dkt. No. 26, Audio of Plaintiff Rangel's Deposition at 51:34). Mr. Goldman finished his question, but Ms. Ceaser instructed her client not to answer on the basis that the question was not relevant and protected by the attorney-client privilege.[1] (*See id.* at pg. 54).

Thereafter, Mr. Goldman asked Plaintiff Rangel how she obtained the name of the attorney she consulted with prior to her visit to the Laredo Medical Center. (*See id.* at pg. 57). Again, Ms. Ceaser objected on the basis of relevance and instructed her client not to answer the question.[2] (*See id.*). As the deposition continued, Mr. Goldman asked Plaintiff Rangel how she chose the Laredo Medical Center as the hospital where she would seek medical attention. (*See id.* at pg. 60). Ms. Ceaser continued to object on relevancy grounds and instructed Plaintiff Rangel not to answer the question. (*See id.*). Mr. Goldman then informed Ms. Ceaser of his right to file a motion to compel and for sanctions in order to re-depose Plaintiff Rangel at Plaintiffs' counsel's cost. (*See id.* at pg. 61). However, Ms. Ceaser continued to instruct Plaintiff Rangel not to answer. (*See id.*).

Mr. Goldman then asked Plaintiff Rangel how she chose her doctor, a similar question as one asked before. (*See id.* at pg. 62). Ms.

---

1. Nonetheless, Plaintiff Rangel answered that very question later in the deposition. (*See id.* at pg. 56–57).

2. Later in the deposition, however, Plaintiff Rangel answered how she obtained the name of the attorney. (*See id.* at pg. 64).

Ceaser instructed her client not to answer. (*See id.*). Subsequently, Mr. Goldman asked Plaintiff Rangel whether she received any treatment from her doctor before choosing a lawyer. (*See id.* at pg. 64). After Plaintiff Rangel responded in the negative, Ms Ceaser instructed her not to answer the question. (*See id.*).

After about one hour of deposing Plaintiff Rangel, Mr. Goldman and Ms. Ceaser agreed to take a lunch break. (*See id.* at pg. 64–65). Upon their return, Ms. Ceaser informed Mr. Goldman that she was "shutting down" the deposition. (*See id.* at pg. 65). Mr. Goldman calmly asked Ms. Ceaser to put Mr. Cowen on the phone.[3] (*See id.*). Nonetheless, Ms. Ceaser proceeded with terminating Plaintiff Rangel's deposition and did not present Plaintiff Batalla for deposition as previously scheduled. (*See* Dkt. No. 21, Ex. 7 at ¶ 6). As a result of Ms. Ceaser's actions, Mr. Goldman then refused to present his clients for their depositions the next day. (*See* Dkt. No. 17, Ex. D at ¶ 6).

At the March 17, 2011 hearing, the parties indicated to the Court that they were in the process of rescheduling the depositions. As of the date of the hearing, Plaintiffs' depositions were scheduled to take place on March 24, 2011 in Laredo. (March 17, 2011 Hearing at 1:50:40). The parties had not yet reached an agreement regarding Defendants' depositions as of the date of the hearing. (*Id.* at 1:51:02).

## II. DISCUSSION

### A. *Ms. Ceaser's Instructions to Her Client Not to Answer Questions During the Deposition were Improper*

In his Motion (Dkt. No. 17), Mr. Goldman argues that Ms. Ceaser's instructions to Plaintiff Rangel not to answer certain deposition questions were incorrect. At the hearing, Mr. Goldman asked the Court for a specific ruling ordering Plaintiff Rangel to answer the questions she was instructed not to answer by Ms. Ceaser. (March 17, 2011 Hearing at 1:57:30). Plaintiff Rangel did not

answer the following questions at the deposition: (1) how she obtained her doctor's name, (*see* Dkt. No. 17, Ex. D., Attach. A at pg. 52); (2) how she chose the Laredo Medical Center as the hospital where she would seek medical attention, (*see id.* at pg. 60); and (3) how she chose her doctor, (*see id.* at pg. 62). Mr. Goldman argues that the information he seeks is relevant in this case because "this [was] a low impact accident . . . that resulted in eventually a referral to a doctor who eventually did surgery on [Plaintiff Rangel's] back." (March 17, 2011 Hearing at 1:59:01). According to Mr. Goldman, "the reasonableness and necessity of the medical expenses, and how she chose her doctors, and the financial arrangements with those doctors is going to be the main issue in this case." (*Id.* at 1:59:34).

Plaintiffs' counsel contends that Mr. Goldman's questions regarding how Plaintiff Rangel retained her counsel and how she found her treating physician are not relevant to "anything to do with whether she was injured, or how the collision occurred." (*See* Dkt. No. 21 at pg. 2). At the hearing, Mr. Cowen further explained that "I try cases. These kinds of cases are what I do, and case after case, . . . instead of focusing on whose fault it was or whether anyone was hurt, [the defense] want[s] to try to prejudice someone because they hired an attorney, [or] because there's . . . a chiropractor" who "legally" refers patients to a "good" lawyer. (March 17, 2011 Hearing at 1:58:11). Mr. Cowen argues that Mr. Goldman's questioning was outside the scope of discovery and directs the Court to Federal Rule of Civil Procedure 26(b)(1), which defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense . . ." (*Id.; see* Dkt. No. 21 at pg. 1). He further argues that, if a question is asked outside the scope of discovery (*i.e.,* not relevant), the attorney defending the deposition is entitled to instruct the witness not to answer the question so that the attorney can file a motion for protection on the issue.[4] (*See* Dkt. No. 21 at pg. 1 (citing Fed.R.Civ.P. 30(d)(3)).)

---

3. It is unclear whether Mr. Goldman was able to speak with Mr. Cowen at that time.

4. According to Plaintiffs' counsel, Ms. Ceaser instructed Plaintiff Rangel not to answer questions that were allegedly outside the scope of discovery

Here, the Court finds that Plaintiffs' arguments pertaining to Rules 26(b)(1) and 30(d)(3) are without merit. First, the Court notes that the threshold for relevance at the discovery stage is lower than at the trial stage. *See In re Gateway Engineers, Inc.*, 2009 WL 3296625, at *2 (W.D.Pa. Oct. 9, 2009) ("relevance is a broader inquiry at the discovery stage than at the trial stage"); *see also Khodara Environmental II, Inc. v. Chest Township*, 2007 WL 2253606, at *1 (W.D.Pa. Aug. 3, 2007) ("the need for something to be 'relevant' to be discoverable is a relatively low threshold to meet as compared to relevance under [Federal Rule of Evidence] 401"). Although Rule 26(b)(1) limits the scope of discovery to nonprivileged and relevant matter, relevance is construed broadly to include "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." [5] *See Khodara Environmental II*, 2007 WL 2253606, at *1 (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)); *see also Martinelli v. Petland, Inc.*, 2010 WL 3947526, at *3 (D.Kan. Oct. 7, 2010). Further, "where relevance is in doubt, [Rule 26(b)(1)] indicates that the court should be permissive" in allowing discovery. *E.E.O.C. v. Simply Storage Management, L.L.C.*, 270 F.R.D. 430, 433 (S.D.Ind.2010) (quoting *Truswal Systems Corp. v. Hydro–Air Engineering, Inc.*, 813 F.2d 1207, 1212 (Fed.Cir.1987) (internal quotations omitted)). Put simply, "[a] request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party." *Martinelli*, 2010 WL 3947526, at *3; *see Gateway Engineers*, 2009 WL 3296625, at *3 ("only if it is palpable that the evidence sought can have no possible bearing upon the issues should a court deny discovery"). Here, given the low threshold of relevance at the discovery stage, the Court finds that Mr. Goldman's three questions are seeking information that could bear on, or reasonably could lead to other matter that could bear on, the issues in this case. As such, Mr. Goldman's questions did not run afoul of the relevance requirement of Rule 26(b)(1).

Second, Plaintiffs' counsel's interpretation of Rule 30(d)(3) is flawed. Rule 30(c)(2) provides that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion [to terminate or limit the deposition] under Rule 30(d)(3)." [6] *See* FED.

in order to preserve the issue to file a motion for protective order. However, counsel's attempt to justify Ms. Ceaser's conduct appears disingenuous. At the deposition, Ms. Ceaser demonstrated her unfamiliarity with the Federal Rules by improperly instructing Plaintiff Rangel not to answer certain deposition questions and by improperly terminating the deposition. It is difficult for the Court to believe that Ms. Ceaser was familiar enough with Federal Rules 30(c)(2) and 30(d)(3)(A) to consciously instruct Plaintiff Rangel not to answer *because* she was going to file a motion for protection. Notably, during the deposition, Ms. Ceaser never informed Mr. Goldman that she intended on taking this course of action. Moreover, a motion for protection was never filed by Plaintiffs' counsel even though Plaintiffs' counsel continues to assert that Mr. Goldman's questions were outside the scope of discovery. Although the Court does not believe that Plaintiffs' failure to file a motion for protection is necessarily dispositive of whether Ms. Ceaser's actions were appropriate, multiple courts in the Fifth Circuit have at least considered it as part of their determination. *See White v. Imperial Adjustment Corp.*, 2000 WL 1210828, at *2 (E.D.La. Aug. 24, 2000) (considering that the discovery dispute was presented to the court through defendants' motion rather than a request for a protective order by plaintiff's counsel in granting defendants' motion); *see also Wilson v. Martin County Hosp. Dist.*, 149 F.R.D. 553, 555 (W.D.Tex.1993) (discussing defendants' failure to seek a protective order after instructing their witness not to answer at a deposition and that defendants left it to plaintiff to bring the matter before the court in the form of a motion to compel).

5. "The broad scope of discovery is necessary given the very nature of litigation, where determinations of relevance for discovery purposes are made well in advance of trial. Those facts which, with the progression of discovery, are not to be considered in determining the ultimate issues may be eliminated in due course." *Gateway Engineers*, 2009 WL 3296625, at *2 (citing *Cash Today of Tex., Inc. v. Greenberg*, 2002 WL 31414138 (D.Del.2002)).

6. The Court notes that Ms. Ceaser did not instruct Plaintiff Rangel as she did in order to file a motion to terminate or limit the deposition. As Mr. Goldman emphasizes, Plaintiffs never filed such a motion. (*See* Dkt. No. 17 at ¶ 8).

R.CIV.P. 30(c)(2). More importantly, to present a motion to terminate or limit a deposition under Rule 30(d)(3)(A), a party must assert that the deposition "is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Because the plain language of Rule 30 is rather clear on what types of objections counsel may make and when counsel may instruct a deponent not to answer a question, courts have generally concluded that it is improper to instruct a witness not to answer a question based on a relevancy objection.[7] *See Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir.1995); *Gober v. City of Leesburg*, 197 F.R.D. 519, 520 (M.D.Fla. Nov.8, 2000); *White*, 2000 WL 1210828, at *2; *Quantachrome Corp. v. Micromeritics Instrument Corp.*, 189 F.R.D. 697, 700 (S.D.Fla. Oct. 30, 1999); *Furniture World, Inc. v. D.A.V. Thrift Stores*, 168 F.R.D. 61, 63 (D.N.M.1996). However, if counsel's questions go so far beyond the realm of possible relevance where the deposition is being conducted in an abusive manner (*i.e.*, in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party), then it would be permissive to instruct a deponent not to answer and move for a protective order under Rule 30(d)(3). *See Quantachrome Corp.*, 189 F.R.D. at 700.

Here, even assuming *arguendo* that Mr. Goldman's questions were not relevant, Plaintiffs' counsel makes no attempt in their motion to explain how Mr. Goldman's questions were so far beyond the realm of possible relevance as to be unreasonably annoying, embarrassing, or oppressing to the deponent. Again, at the March 17th hearing, Mr. Cowen attempted to justify Ms. Ceaser's behavior by making a general claim that opposing attorneys try to prejudice his clients because "they hired an attorney," or someone has "legally" referred the client to an attorney. This explanation simply falls short in demonstrating to the Court why Rule 30(d)(3) provides justification for Ms. Ceaser's instructions to Plaintiff Rangel.[8]

### B. Ms. Ceaser's Suspension of the Deposition Was Also Improper

Defendants further argue that Ms. Ceaser failed to comply with the Federal Rules when she suspended the deposition. Plaintiffs argue that Ms. Ceaser was justified under Rule 30(d)(3) in terminating the deposition because Mr. Goldman "yelled" at Ms. Ceaser and "repeatedly threaten[ed] to sanction her in an attempt to intimidate her into withdrawing her objections."[9] (*See* Dkt. No. 21

---

7. Notably, even if Ms. Ceaser failed to make a relevancy-based objection, the objection would not be deemed waived. *See* FED.R.CIV.P. 32(d)(3)(A). In fact, the Federal Rules suggest that objections "ordinarily should be limited to those that under Rule 32(d)(3) might be waived if not made at that time ..." *See* FED.R.CIV.P. 30(d) 1993 Advisory Committee's Note (2). However, if counsel feels the need to object on relevancy grounds, an objection to relevancy should be noted on the record, "but the examination still proceeds; the testimony is taken subject to any objection." FED.R.CIV.P. 30(c)(2); *see also* FED.R.CIV.P. 30(d) 1993 Advisory Committee's Note ("Directions to a deponent not to answer a question can be even more disruptive than objections."); *see also Jones v. Mundy Contract Maint., Inc.*, 2003 WL 25528965 (S.D.Tex. Jan. 23, 2003) (ordering defendant to make deponent available for an additional deposition, limited to the questions that were asked but not answered due to defendant's counsel's improper instructions not to answer). Thus, the proper course of action would have been for Ms. Ceaser to object to the specific questions on the record, if she felt it necessary to do so, and proceed with the deposition. *See* FED.R.CIV.P. 30(c)(2).

8. The Court understands Mr. Cowen's concern that Mr. Goldman may obtain prejudicial information if the deponent is required to answer the above-mentioned questions. However, Mr. Cowen's argument is simply premature at this stage in the case. As discussed above, whether or not that evidence is relevant *and* admissible at trial is different from whether or not it is discoverable at this stage in the case. Thus, Mr. Cowen's concern would be better addressed after discovery and before trial when he can argue that the evidence is not relevant under Federal Rule of Evidence 401, or that even if such evidence is relevant, it should be excluded because "its probative value is substantially outweighed by the danger of unfair prejudice" under Federal Rule of Evidence 403.

9. The Court notes that after reviewing the deposition transcript and audio, at the moment that Ms. Ceaser recessed the deposition, she seemed to be uncomfortable with Mr. Goldman's line of questioning, rather than his tone. (*See* Dkt. No. 17, Ex. D, Attach. A at pg. 64–65).

at pg. 3). Ms. Ceaser "felt that [Mr. Goldman] was yelling at [her] and [her] client" and that he "was being abusive, harassing, and unprofessional." (*See* Dkt. No. 21, Ex. 7 at ¶ 5).

■ As discussed above, a party can move to terminate a deposition if it "is being conducted ... in a manner that unreasonably annoys, embarrasses, or oppresses *the deponent or a party* ... If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order." *See* FED.R.CIV.P. 30(d)(3)(A). (emphasis added). Here, after reviewing the audio recording of the deposition, the Court notes that there are a few instances where Mr. Goldman grew noticeably irritated with Ms. Ceaser's improper instructions to Plaintiff Rangel. In fact, Mr. Goldman did raise his voice at Ms. Ceaser during a few of the exchanges between counsel. (*See* Dkt. No. 26, Audio of Plaintiff Rangel's Deposition at 51:43, 51:55, and 56:50). The Court further notes that, while Mr. Goldman did not raise his voice toward Plaintiff Rangel, it appears that the tone of Mr. Goldman's voice changed as he continued questioning her in a firm manner. (*See, e.g.,* Dkt. No. 26, Audio of Plaintiff Rangel's Deposition at 51:45). Although the Court does not condone Mr. Goldman's conduct, under the circumstances, his actions were not so "abusive, harassing, or unprofessional" as to warrant termination of Plaintiff Rangel's deposition under Rule 30(d)(3)(A). *See, e.g., Carroll v. The Jaques Admiralty Law Firm, P.C.,* 110 F.3d 290, 293 (5th Cir.1997) (deponent/attorney's abusive behavior by use of threats and profanity at his deposition warranted termination of the deposition); *Gathers v. Widnall,* No. 5:96–cv–00432–OLG, slip op. at 6 (W.D. Tex. April 8, 1997) (plaintiff's counsel conducted her questioning to unreasonably annoy the deponent by continuing on the same issue for twenty-nine pages before defense counsel suspended the deposition).

### C. It Was Improper for Both Parties to Cancel Their Respective Depositions

In addition to terminating Plaintiff Rangel's deposition, Ms. Ceaser cancelled the deposition of Plaintiff Batalla, scheduled for later that day. Defendants argue that this is an additional basis for recovery of Defendants' reasonable attorney's fees and other expenses incurred as a result of Ms. Ceaser's actions. (*See* Dkt. No. 17 at ¶¶ 10–11). In Plaintiffs' Motion, they ask the Court to compel the appearance of Mr. Goldman's clients for the two previously-cancelled depositions. (*See* Dkt. No. 19). According to Plaintiffs, Defendants' failure to attend the depositions was in violation of the Federal Rules, and Defendants did not move for a protective order before unilaterally deciding not to appear at the depositions. (*See id.* at pg. 2).

■ Pursuant to Federal Rule of Civil Procedure 37(d), a party may be sanctioned for its failure to attend a properly noticed deposition.[10] "Awardable sanctions under [Rule 37(d) ] are entirely flexible depending on the circumstances of each case." *Shumock v. Columbia/HCA Healthcare Corp.,* 1999 WL 1021829, at *1 n. 4 (E.D.La. Nov. 10, 1999) (citing *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)). However, the court *must* require the party failing to act, his attorney, or both, to pay the reasonable expenses, including the payment of the other parties' attorneys' fees, unless the failure to act was "substantially justified or other circumstances make an award of expenses unjust." FED.R.CIV.P. 37(d)(3).

■ "[P]arties may not escape sanctions simply by notifying the attorney who noticed the deposition that they will not appear." *Peyman v. Rayan,* 2011 WL 976925, at *1 (D.Nev. March 18, 2011) (citing Wayne D. Brazil, 7 Moore's Federal Practice § 37.91 (Matthew Bender 3d ed.)). In determining whether Rule 37(d) sanctions are warranted, a court can consider whether reasonable notice was given in cancelling a party's deposition. *See Miller v. Dyadic Int'l, Inc.,* 2008 WL 2116590, at *2 (S.D.Fla. May 20, 2008); *see also Cowe v. Equifax Credit Reporting,* 2010 WL 925288, at *4 (N.D.Ga. Mar. 8, 2010). Finally, failure to appear without filing a motion for protective order is another consideration in determining whether a viola-

---

10. The parties are not asserting that the deposi- tions were improperly noticed.

tion of Rule 37(d) has occurred.[11] *See Barnes v. Madison,* 79 Fed.Appx. 691, 707 (5th Cir.2003) (considering plaintiff's failure to file a motion for protective order, among other factors, in affirming the district court's finding that plaintiff's failure to appear was not substantially justified); *see also D'Orsogna v. Tex. Dep't. of Health,* 1998 WL 1781735, at *2 (W.D.Tex. Mar. 6, 1998) ("defendants failed to appear for depositions without filing a motion for protective order, therefore, Rule 37(d) was violated") (citing *Lee v. Walters,* 172 F.R.D. 421, 425 (D.Org.1997)); *see also Paige v. Consumer Programs, Inc.,* 248 F.R.D. 272 (C.D.Cal. 2008) ("plaintiff's failure to appear [at his deposition] was not substantially justified since plaintiff ... failed to file a motion for protective order under Rule 26(c) ...").

### 1. Plaintiffs' counsel did not provide a substantial justification for failing to present Plaintiff Batalla for deposition

■ According to Plaintiffs, they "do not oppose Defendants' right to thoroughly depose Plaintiffs regarding matters within the scope of discovery." (*See* Dkt. No. 21 at pg. 5). Plaintiffs attempt to justify their failure to present Plaintiff Batalla for deposition by saying that Mr. Goldman would have been able to conclude both Plaintiffs depositions if he had "been willing to proceed with [Plaintiff Rangel's] deposition in a calm, professional manner." (*See id.*). However, as stated above, Mr. Goldman's behavior was not so abusive or unprofessional as to justify terminating Plaintiff Rangel's deposition. Similarly, that same behavior would not provide Plaintiffs' with "substantial justification" for

failing to present Plaintiff Batalla for his deposition.

### 2. Defendants' did not provide a substantial justification for failing to attend their depositions

To justify his actions, Mr. Goldman argues that he cancelled the depositions based on a party agreement that Plaintiffs would be deposed before Defendants. (March 17, 2011 Hearing at 1:48:25). Mr. Goldman further argues that he did not think it was "fair" for him to "waste the afternoon" and "sit around and wait for that evening" in order to prepare his clients for the deposition scheduled for the next day. (*Id.* at 1:49:20). Stated differently, he believed it was a "waste of [his] time" and "not a good use of [his] time" to stay after Plaintiff Rangel's deposition had been terminated. (*Id.*).

■ The Court is not persuaded that Mr. Goldman's arguments provide a "substantial justification" for cancelling Defendants' depositions. Here, Mr. Goldman does not cite to any legal authority that gives him the right to cancel a properly-noticed deposition under these specific circumstances. Mr. Goldman also failed to provide Plaintiffs' counsel reasonable notice of the cancellations when he cancelled the depositions less than twenty-four hours before they were scheduled to take place. Further, the Court notes that Mr. Goldman did not file a protective order with the Court. More importantly, Mr. Goldman concedes that Plaintiffs' deposition testimony was not essential to prepare for and adequately defend his clients' depositions.[12] (March 17, 2011 Hearing at 1:48:40).

**11.** "Nonetheless, the mere act of filing a motion for protective order does not relieve a party of the duty to appear; the party is obliged to appear until some order of the court excuses attendance." *Barnes v. Madison,* 79 Fed.Appx. 691, 707 (5th Cir.2003) (citing *King v. Fidelity Nat'l Bank of Baton Rouge,* 712 F.2d 188, 191 (5th Cir.1983) (per curiam)).

**12.** Even if the deposition testimony was essential for preparation purposes, Mr. Goldman would not have been entitled to cancel Defendants' depositions. *See, e.g., Edmonds v. Seavey,* 379 Fed. Appx. 62, 64 (2d Cir.2010) (holding that plaintiff's counsel's cancellation of the witness's deposition was done in retaliation for defendants'

purported 'obstructions in the discovery process,' and "the proper course would have been to proceed with the deposition"); *see also Barrett v. Brian Bemis Auto World,* 230 F.R.D. 535, 536 (N.D.Ill.2005) (holding that the cancellation of plaintiff's expert's deposition was unwarranted despite defendant's representations that he needed the requested documents to prepare for the deposition; "at the very least, counsel should have started the deposition on the topics she was prepared for ..."). Although the case law cited above was decided in the context of Rule 30(g), where the noticing party fails to attend and proceed with the deposition, the same logic applies in the context of Rule 37(d), where a party fails to attend its own deposition.

Mr. Goldman's inefficiency argument is similarly deficient. Mr. Goldman's cancellation of Defendants' deposition ultimately had the effect of adding another block of "wasted" time where Mr. Goldman will have to make an additional trip to Laredo to prepare and present his clients for their depositions on another date. Moreover, Mr. Goldman seems to be solely concerned with *his* schedule and how Ms. Ceaser's actions ultimately affected *his* time. However, Mr. Goldman was not the only participant affected by the cancellation of his clients' depositions. The Court notes that his own clients were traveling from Mexico that evening to prepare for their deposition the following day. Furthermore, it appears to the Court that at least one attorney from Mr. Cowen's law firm had already traveled to Laredo for Defendants' depositions scheduled for February 17, 2011. As such, it probably would have been more efficient for everyone involved if Mr. Goldman had proceeded with Defendants' depositions as scheduled.

Finally, at approximately 1:31 p.m. on February 16, 2011, Mr. Goldman faxed a letter to Plaintiffs' counsel after Ms. Ceaser terminated Plaintiff Rangel's deposition indicating that "[he] nor [his] client will be showing up for the depositions scheduled tomorrow in Laredo." (*See* Dkt. No. 19, Ex. 2). In the letter, Mr. Goldman stated that the reason they would not be attending the previously-scheduled depositions was because of the unilateral suspension of Plaintiff Rangel's deposition. (*See id.*). In light of this letter, it appears to the Court that Mr. Goldman was upset and his cancellation was nothing more than retaliation for the termination and cancellation of Plaintiffs' depositions. Under these circumstances, Mr. Goldman's proper course of action would have been to proceed with his clients' depositions. Consequently, although it was improper for Ms. Ceaser to terminate the deposition of Plaintiff Rangel and to fail to present Plaintiff Batalla for deposition, Mr. Goldman's reaction only made an already bad situation even worse. Thus, Mr. Goldman was not substantially justified in cancelling Defendants' depositions.

## D. Parties' Requested Sanctions

### 1. Defendants' request for sanctions

██ Federal Rule of Civil Procedure 30(d)(2) provides the Court with the power to impose an appropriate sanction against an attorney (including the reasonable expenses and attorney's fees incurred by any party) for impeding, delaying, or frustrating the fair examination of the deponent. According to Mr. Goldman, Ms. Ceaser "impeded, delayed, and otherwise frustrated" his ability to take a fair examination of Plaintiff Rangel by instructing Plaintiff Rangel not to answer Mr. Goldman's questions and unilaterally stopping her deposition. (*See* Dkt. No. 17 at ¶ 10). Mr. Goldman further argues that Ms. Ceaser's conduct also "impeded, delayed, and otherwise frustrated" his ability to take a fair examination of Plaintiff Batalla by not presenting her client for his previously-scheduled deposition. (*See id.*). The Court agrees that Ms. Ceaser should have allowed Plaintiff Rangel to answer the questions posed by Mr. Goldman, subject to her objections, and should have proceed with Plaintiffs' depositions. Thus, Mr. Goldman is entitled to some reimbursement of attorney's fees and other expenses for Ms. Ceaser's actions.

### 2. Plaintiffs' request for sanctions

Despite Mr. Goldman's cancellation of Defendants' depositions without a sound legal basis and without seeking a protective order from the Court, Plaintiffs claim that they are not seeking sanctions against Defendants for the cancellations or for the costs of filing their Motion to Compel (Dkt. No. 19). (*See* Dkt. No. 21 at pg. 6; March 17, 2011 Hearing at 1:49:48). However, Plaintiffs' counsel does ask the Court to consider that "they suffered the same harm (the inability to take depositions) about which Defendants complain." (*See* Dkt. No. 21 at pg. 6–7). Mr. Cowen further requested that the Court discount any amount that Mr. Goldman may be entitled to because Mr. Goldman also cancelled his clients' depositions. (March 17, 2011 Hearing at 2:00:39). In essence, the offset sought by Mr. Cowen against Mr. Goldman would have the same effect as a sanction against him. As such, the Court will construe Mr. Cowen's request for an offset as a reimbursement request for the

reasonable expenses he incurred as a result of Mr. Goldman's actions (Dkt. No. 19).

Notably, Federal Rule of Civil Procedure 37(a)(5)(A) authorizes the Court to order payment of the movant's reasonable expenses incurred in filing a motion to compel if the motion is granted or "if the disclosure or requested discovery is provided after the motion was filed." Here, Mr. Goldman is not opposed to presenting his clients for deposition. (*See* Dkt. No. 20). Rather, Mr. Goldman agrees to present Defendants for their depositions once he has had an opportunity to complete the deposition of Plaintiff Rangel and to take the deposition of Plaintiff Batalla. (*See id.* at pg. 2). Moreover, at the hearing held on March 17, 2011, the parties were in the process of rescheduling Defendants' depositions. As a result, at this time, it is unnecessary for the Court to issue an order to compel Mr. Goldman to present his clients for deposition. Therefore, "Plaintiffs' Motion to Compel the Depositions of Defendants" (Dkt. No. 19) is DENIED AS MOOT WITHOUT PREJUDICE.

However, the parties' apparent agreement to reschedule Defendants' depositions does not moot Plaintiffs' request for an award of expenses related to the filing of the Motion to Compel (Dkt. No. 19). *See* FED.R.CIV.P. 37(a)(5)(A); *see also Segraves v. City of Zachary*, 2009 WL 3764014, at *1 (M.D.La. Nov. 9, 2009) (holding that defendants' service of their discovery responses does not moot the plaintiffs' request for an award of expenses). Accordingly, the Court will consider Mr. Goldman's failure to present his clients for deposition on their previously-scheduled date as part of its decision to award attorney's fees and other expenses.

### 3. *Attorney's fees: The "lodestar" method*

 Since both parties are partly at fault and are seeking sanctions against each other, they must provide the Court with the necessary documentary evidence as required by the Fifth Circuit's method for calculating fee awards. In the Fifth Circuit, the "lodestar" method is used to calculate attorney's fees for purposes of fee awards. *Tollett v. City of Kemah*, 285 F.3d 357, 367–68 (5th Cir.2002). In calculating a lodestar, the number of hours reasonably expended are multiplied by an appropriate hourly rate in the community for such work.[13] *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir.2003) (citing *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir.1999)). The party seeking reimbursement of attorney's fees bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir.1993); *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir.1990). The court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *Watkins*, 7 F.3d at 457 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 432–34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The hours remaining are those reasonably expended.[14] *Id.*

 Additionally, a party seeking attorney's fees may only recover for time spent in preparing the actual discovery motion. *Moats v. City Hosp., Inc.*, 2007 WL 2220282, at *4 (N.D.W.Va. Aug. 2, 2007) (citing *Tollett*, 285 F.3d at 368). Thus, any fees and expenses not actually caused by a discovery violation are not assessable. *See Tollett*, 285 F.3d at 368 ("Obviously, the fees incurred for the underlying discovery requests were not caused by any failure to comply. Discovery dispute or no, those fees would have been incurred.").

*Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

**13.** After the lodestar is calculated, the court may either (1) accept this figure, or (2) decrease or enhance it based on the circumstances of the case, taking into account what are referred to as the *Johnson* factors. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324, 329 (5th Cir.1995); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). However, the lodestar is presumed to be reasonable and should only be modified in exceptional cases.

**14.** Hours not properly billed to one's client are also not properly billed to one's adversary. *Hallmark Capital Group, LLC v. 6320 Hayne Blvd., Inc.*, 2007 WL 4257069, at *2 (E.D.La. Nov. 30, 2007) (citing *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933).

■ A reasonable hourly rate should be determined based on "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). The relevant legal community is the community in which the district court sits. *Tollett*, 285 F.3d at 368 (citing *Scham v. Dist. Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir.1998)). The movant bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates in the community. *Blum*, 465 U.S. at 896 n. 11, 104 S.Ct. 1541. Proper evidence of a reasonable hourly rate includes an attorney's own affidavit presenting information as to the rates actually billed and paid in similar lawsuits. *Hallmark*, 2007 WL 4257069, at *1 (citing *Blum*, 465 U.S. at 896, 104 S.Ct. 1541). Generally, however, the reasonable hourly rate for a community is established through affidavits of other attorneys practicing there. *Tollett*, 285 F.3d at 368. Such affidavits should contain direct or opinion evidence as to what local attorneys would charge under similar circumstances. *Hallmark*, 2007 WL 4257069, at *2 (citing *Norman*, 836 F.2d at 1299).

Here, Mr. Goldman seeks sanctions in the amount of $3,500.00 without itemizing his fees and costs. Moreover, he did not set forth any evidence pertaining to the prevailing market rate in the relevant legal community. Mr. Goldman indicates that he spent approximately ten hours on tasks directly related to Ms. Ceaser's conduct. (*See* Dkt. No. 17, Ex. D at ¶ 7). Further, he contends that an associate at his firm spent an additional eight hours due to Ms. Ceaser's conduct. (*See id.*). However, Mr. Goldman failed to supplement his motion in accordance with *Tollett*, 285 F.3d at 357, by filing an affidavit stating the reasonable hourly rate for attorneys in the community (*i.e.*, Webb County or the Laredo Division) and an itemization of the time spent by Mr. Goldman in preparing the motion. Similarly, Mr. Cowen failed to set forth specific evidence for the Court to determine the amount of any offset to which he may be entitled. Thus, Mr. Goldman and Mr. Cowen must provide the Court with adequate proof that their respective requested rate is in conformity with prevailing market rates in the community. *See Blum*, 465 U.S. at 896 n. 11, 104 S.Ct. 1541.

#### 4. Other expenses

The Court anticipates that Mr. Goldman will be asking for reimbursement of other expenses including the cost of the interpreter, the cost of the stenographer, and travel expenses. (*See* Dkt. No. 17).[15] It is unclear whether Mr. Cowen will be asking for reimbursement of other expenses. Each party has the burden of demonstrating why they are entitled to reimbursement of any expenses sought with supporting documentation and case law.

### E. Defendants' Request to Extend Scheduling Order Deadlines

■ Defendants request an extension for the deadline to designate experts, the discovery deadline, and a continuance of the current trial setting. (*See* Dkt. No. 17 Sec. C and D). Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order may only be modified "for good cause and with the judge's consent." The Fifth Circuit has explained that "[t]he good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S & W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir.2003) (quoting 6A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed.1990)). In other words, the party who seeks to modify a scheduling order deadline must show that, despite acting diligently, it will still be unable to meet that deadline. *Rivera v. County of Willacy*, 2007 WL 1655303, at *1, 2007 U.S. Dist. LEXIS 41401, at *2 (S.D.Tex. June 6, 2007). More-

---

15. When submitting his expenses to the Court, Mr. Goldman should keep in mind that he is not entitled to any costs that were incurred as a direct result of his failure to present his clients for their depositions because he did not have a legal basis for the cancellations.

over, mere stipulations by the parties do not constitute good cause. *Id.* at *1, 2007 U.S. Dist. LEXIS 41401, at *3 (citing *Chiropractic Alliance of N.J. v. Parisi*, 164 F.R.D. 618, 621 (D.N.J.1996)).

 Defendants argue that "good cause" exists because they were not able to properly depose both Plaintiffs and "depending on what each Plaintiff says during a proper deposition, ... counsel may determine that Defendants need to hire a particular type of expert." (*See* Dkt. No. 17 at ¶ 14). Defendants further argue that Plaintiffs would not be prejudiced by an extension because Plaintiffs' counsel caused the delay. (*See id.* at ¶ 14). Finally, Defendants assert that they "diligently used the discovery process to obtain the Plaintiffs' testimony" but were unable to do so due to Ms. Ceaser's conduct. (*See id.* at ¶ 17). Plaintiffs do not oppose Defendants' extension requests. (*See* Dkt. No. 21 at pg. 5).

Here, the Court finds that good cause exists to grant Defendants' requested extensions. Thus, the Court will extend all remaining deadlines by approximately seven weeks, the amount of time between the date of the Plaintiffs' failed depositions and the date of this Order.

## III. CONCLUSION

Thus, "Defendants' Opposed Motion for Sanctions, Opposed Motion for Extension of Time to Designate Defendants' Expert/Discovery Deadline, and Opposed Motion for Continuance and Briefs in Support" (Dkt. No. 17) is GRANTED IN PART AND DENIED IN PART. "Plaintiffs' Motion to Compel the Depositions of Defendants" (Dkt. No. 19) is DENIED AS MOOT WITHOUT PREJUDICE.

IT IS ORDERED that Plaintiff Rangel answer the three questions left unanswered at her deposition as outlined above.

After reviewing the record, the Court is not convinced that either party made a good-faith effort to resolve these discovery disputes before filing their respective motions. THUS, IT IS FURTHER ORDERED that the parties confer and attempt to come to an agreement regarding recoverable attorney's fees and other expenses prior to filing any supporting documentation with the Court. If an agreement is reached, the parties should file a brief notice with the Court advising the Court that they have reached an agreement. If the parties cannot come to an agreement, then Mr. Goldman and Mr. Cowen should each file with the Court an itemized list of the expenses they seek to recover, along with an affidavit supporting their request for attorney's fees in accordance with *Tollett v. City of Kemah*, by April 25, 2011.

Finally, the Court DIRECTS the Clerk of Court to enter the following scheduling-order deadlines into the record.

| PRETRIAL EVENTS | DEADLINES |
| --- | --- |
| Deadline for defendant to designate expert witnesses & reports | April 18, 2011 |
| Discovery deadline | June 15, 2011 |
| Deadline to complete ADR | June 29, 2011 |
| Deadline to amend pleadings (with parties consent or leave of Court) | July 18, 2011 |
| Deadline to file contested motions | August 1, 2011 |
| Deadline to file joint pretrial order, motions in limine & proposed jury instructions (or proposed findings of fact & conclusions of law) | September 19, 2011 |
| Pretrial conference & trial scheduling in Courtroom 3B with United States District Judge Micaela Alvarez. | October 3, 2011 at 10:00 a.m. |