**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff,

v.

**SIMPLY STORAGE MANAGEMENT, LLC and O.B. Management Services, Inc., Defendants.**

No. 1:09–cv–1223–WTL–DML.

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 11, 2010.

Jo Ann Farnsworth, EEOC, Laurie A. Young, Michelle Eisele, Robin M. Lybolt, U.S. Equal Employment Opportunity Commission, Indianapolis, IN, for Plaintiff.

Andrew M. McNeil, Daniel C. Emerson, Emily L. Yates, Bose Mckinney & Evans, LLP, Indianapolis, IN, for Defendants.

*Order on Discovery Issues Raised
During April 21 Conference*

DEBRA McVICKER LYNCH, United States Magistrate Judge.

The parties appeared by counsel for a telephone discovery conference on April 21, 2010, and presented two issues: (1) whether two of the claimants must produce the internet social networking site (SNS) profiles [1] and other communication from their Facebook and *MySpace.com* accounts, and (2) whether the EEOC must produce information about the claimants' prior employment since 2003, including the names and addresses of the employers, dates of employment, positions held, and reasons for separation. After directing the parties to submit any pertinent decisions they wish the court to consider, the court took the matters under advisement.

### Facts

On September 29, 2009, the EEOC filed a complaint on behalf of two named claimants and similarly situated individuals who allege the defendant businesses (collectively referred to in this Order as "Simply Storage") are liable for sexual harassment by a supervisor. The EEOC amended its complaint in November 2009 to sue different defendants, but the EEOC did not change its substantive allegations or the named claimants. *See* Dkt. 7.

On April 16, 2010, the EEOC requested a discovery conference because counsel for the parties disagree about the proper scope of discovery as it relates to the two issues identified above. These disputes affect both pending written discovery requests and the scope of upcoming depositions. The disputed requests for production of documents that seek SNS information are:

**REQUEST NO. 1**: All photographs or videos posted by Joanie Zupan or anyone on her behalf on Facebook or MySpace from April 23, 2007 to the present.

**REQUEST NO. 2**: Electronic copies of Joanie Zupan's complete profile on Facebook and MySpace (including all updates, changes, or modifications to Zupan's profile) and all status updates, messages, wall comments, causes joined, groups joined, activity streams, blog entries, details, blurbs, comments, and applications (including, but not limited to, "How well do you know me" and the "Naughty Application") for the period from April 23, 2007 to the present. To the extent electronic copies are not available, please provide the documents in hard copy form.

**REQUEST NO. 3**: All photographs or videos posted by Tara Strahl or anyone on her behalf on Facebook or MySpace from October 11, 2007 to November 26, 2008.

**REQUEST NO. 4**: Electronic copies of Tara Strahl's complete profile on Facebook and MySpace (including all updates, changes, or modifications to Strahl's profile) and all status updates, messages, wall comments, causes joined, groups joined, activity streams, blog entries, details, blurbs, comments, and applications (including, but not limited to, "How well do you know me" and the "Naughty Application") for the period from October 11, 2007 to November 26, 2008. To the extent electronic copies are not available, please provide these documents in hard copy form.

Dkt. 38 Ex. 1.

The disputed interrogatory that seeks information related to prior employment history is:

**INTERROGATORY NO. 2**: For Martin, Burkett, and all similarly situated individuals, identify each employer since January 1, 2003 to the present, including dates of employment, positions held, and reason for leaving.

*Id.*

The EEOC objects to production of all SNS content (and to similar deposition questioning) on the grounds that the requests are overbroad, not relevant, unduly burdensome because they improperly infringe on claimants' privacy, and will harass and embarrass the claimants. *See* Dkt. 33. Simply Storage claims that discovery of these matters is

---

1. The court interprets "profile" to mean any content—including postings, pictures, blogs, messages, personal information, lists of "friends" or causes joined—that the user has placed or created online by using her user account.

proper because certain EEOC supplemental discovery responses place the emotional health of particular claimants at issue beyond that typically encountered with "garden variety emotional distress claims." Dkt. 43–1. Simply Storage's Interrogatory No. 4 asked for details about the EEOC's damage calculation, and the EEOC responded in pertinent part:

> [I]t is known that Bunny Baker, Marilou Burkett, and Ellen Martin sustained "garden variety" and non ongoing emotional distress in association with the sexual harassment they endured, which includes emotional pain and suffering, loss of enjoyment of life, anxiety, fear, bitterness, humiliation, embarrassment and inconvenience. They do not claim ongoing emotional harm. Defendants' sexually hostile workplace increased Tara Strahl's anxiety for which she sought medical treatment. As a result of the sexual harassment she experienced, Joanalle Zupan became depressed and suffers from post traumatic stress disorder.

*Id.* Simply Storage's Interrogatory No. 8 requested information about any medical or psychological counseling or treatment the claimants had sought related to their employment with Simply Storage and the EEOC responded in pertinent part:

> Joanalle Zupan, beginning in August of 2009, has sought treatment for depression and post traumatic stress ... and later counseling.... She is scheduled to see psychiatrist Maleakal Mathew, M.D. in May 2010. Ms. Strahl sought treatment from her physician Jackie Evans, M.D. for increased anxiety sometime in March of 2008.

*Id.*

As for information about the claimants' prior employment, Simply Storage argues that these requests are commonplace. Pressed for an articulation of relevance, Simply Storage explains that training the claimants could have received from former employers about sexual harassment, including how to report it, may be pertinent to their allegations in this case.

### Discussion

The Rule 26 standard is broad. Rule 26(b), entitled "Discovery Scope and Limits," provides:

> (1).... Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.... All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

"[W]here relevance is in doubt, [Rule 26(b)(1)] indicates that the court should be permissive." *Truswal Systems Corp. v. Hydro–Air Engineering, Inc.,* 813 F.2d 1207, 1212 (Fed.Cir.1987). The scope of relevancy under Rule 26 is "extremely broad," but it is not without its limits. *Rozell v. Ross–Holst,* 2006 WL 163143, *2 (S.D.N.Y.2006). The limitations Rule 26(b)(2)(C) provides on otherwise relevant discovery are:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

*Discovery of Two Claimants' Social Networking Sites*

### A. General Principles Applicable to Discovery of SNS

The EEOC does not argue that Facebook and MySpace profiles contain no relevant information. It insists, however, that production should be limited to content that directly addresses or comments on matters alleged in the complaint. Simply Storage contends that the nature of the injuries Ms. Zupan and Ms. Strahl have alleged implicates all their social communications (*i.e., all* their Facebook and MySpace content).

Discovery of SNS requires the application of basic discovery principles in a novel context. And despite the popularity of SNS and the frequency with which this issue might be expected to arise, remarkably few published decisions provide guidance on the issues presented here. At bottom, though, the main challenge in this case is not one unique to electronically stored information generally or to social networking sites in particular. Rather, the challenge is to define appropriately broad limits—but limits nevertheless—on the discoverability of social communications in light of a subject as amorphous as emotional and mental health, and to do so in a way that provides meaningful direction to the parties. The court will first outline the principles it will apply in confronting this challenge.

1. *SNS content is not shielded from discovery simply because it is "locked" or "private."*

■ Although privacy concerns may be germane to the question of whether requested discovery is burdensome or oppressive and whether it has been sought for a proper purpose in the litigation, a person's expectation and intent that her communications be maintained as private is not a legitimate basis for shielding those communications from discovery. Two decisions factually similar to this one have recognized this threshold point. *See Leduc v. Roman*, 2009 Can-

LII 6838 (ON S.C.), and *Murphy v. Perger* (ON S.C.). In these cases, the courts held that a requesting party is not entitled to access all non-relevant material on a site, but that merely locking[2] a profile from public access does not prevent discovery either. *See also Mackelprang v. Fidelity Nat'l Title Agency of Nevada, Inc.*, 2007 WL 119149 (D.Nev.2007). As in other cases when privacy or confidentiality concerns have been raised, those interests can be addressed by an appropriate protective order, like the one already entered in this case.

2. *SNS content must be produced when it is relevant to a claim or defense in the case.*

■ Simply Storage argues that all the content of Ms. Zupan's and Ms. Strahl's social networking sites is relevant, must be produced, and can be the subject of questioning during their depositions. Although, as noted above, the contours of social communications relevant to a claimant's mental and emotional health are difficult to define, that does not mean that everything must be disclosed. Simply Storage has cited one decision in which the court did require production of the plaintiff's entire SNS profile, but that case is distinguishable in a number of ways. In *Bass v. Miss Porter's School*, 2009 WL 3724968, *1 (D.Conn.2009), the defendant had served discovery requests much narrower than those Simply Storage has served. The defendant in *Bass* had not asked for *complete* Facebook and MySpace profiles but for documents related to the plaintiff's alleged "teasing and taunting" and those representing or relating to communications between the plaintiff and anyone else "related to the allegations in [the] Amended Complaint." *Id.* at *1. The court's *in camera* review demonstrated that the plaintiff's choice of documents responsive to the defendants' requests was vastly underinclusive. It therefore overruled her "undifferentiated objection" and provided the complete Facebook profile to the defendant. The discovery issue in this case is substantively and procedurally different. Here, the parties have sought the

---

2. SNS profiles typically have privacy options that allow SNS users to determine who may view their profile. "Locking" a profile from public view means that the SNS user has decided that only other SNS users who have obtained permission may view the profile.

court's ruling on the EEOC's objections *before* the production; there is no contention that the EEOC's production is deficient. The procedure employed in *Bass* could be appropriate should a further dispute arise regarding the EEOC's compliance with this order, but the result in *Bass* does not convince the court that production of the claimants' complete SNS content should be required in the first instance.

■ Moreover, the simple fact that a claimant has *had* social communications is not necessarily probative of the particular mental and emotional health matters at issue in the case. Rather, it must be the substance of the communication that determines relevance. *See Rozell v. Ross–Holst*, 2006 WL 163143 (S.D.N.Y. Jan.20, 2006). As the *Rozell* court put it,

> To be sure, anything that a person says or does might in some theoretical sense be reflective of her emotional state. But that is hardly justification for requiring the production of every thought she may have reduced to writing or, indeed, the deposition of everyone she may have talked to.

*Id.* at *3–4.

For example, if a claimant sent a message to a friend saying she always looks forward to going to work, the person to whom she sent the message and the substance of the message are what should be considered to determine whether the message is relevant. (And that message would be relevant in this case.) But the mere fact that the claimant has made a communication is not relevant because it is not probative of a claim or defense in this litigation. The *Rozell* decision also notes, however, that the defendant may argue the *absence* of relevant communications casts doubt on the plaintiff's claims. *See id.* at *3.

3. *Allegations of depression, stress disorders, and like injuries do not automatically render all SNS communications relevant, but the scope of relevant communications is broader than that urged by the EEOC.*

In *Mackelprang*, 2007 WL 119149, the defendants had obtained the plaintiff's public MySpace profile after she had alleged sexual harassment claims against them. The court held that the defendants could discover private messages exchanged with third parties that contain information regarding her sexual harassment allegations or her alleged emotional distress. *Id.* at *8. The court expressly ruled, however, that emails consisting of sexually explicit communications between the plaintiff and third persons and that did not relate to her employment with the defendants were not discoverable. *Id.*

A similar situation was presented in *Rozell*, 2006 WL 163143, at *3, where the court rejected the defendants' claim that the plaintiff who had alleged sexual harassment should produce all of her email communications. When the plaintiff had complained about the supervisor, the supervisor retaliated by hacking into her emails. The defendants had requested the disclosure of all emails in the plaintiff's account, but the court required production of only the intercepted emails. *Id.* The court reasoned the contents of those emails were relevant to assess plaintiff's claimed damages. *Id.*

■ It is reasonable to expect severe emotional or mental injury to manifest itself in some SNS content, and an examination of that content might reveal whether onset occurred, when, and the degree of distress. Further, information that evidences other stressors that could have produced the alleged emotional distress is also relevant. *See Doe v. Smith*, 470 F.3d 331, 341 (7th Cir. 2006). Thus, the court determines that some SNS discovery is appropriate here. The next question is the permissible scope of that discovery.

The EEOC's view that the claimants should be required to produce only communications that directly reference the matters alleged in the complaint is too restrictive. This standard likely would not encompass clearly relevant communications and in fact would tend only to yield production of communications supportive of the claimants' allegations. It might not, for example, yield information inconsistent with the claimants' allegations of injury or about other potential causes of the injury. And although some employees may note occurrences of harass-

ment on their profiles, not many employees would routinely note non-events on their profiles, such as, "My supervisor didn't sexually harass me today." A definition of relevant SNS content broader than that urged by the EEOC is therefore necessary.

### B. The Scope of SNS Discovery to Be Permitted in this Case

#### 1. *The Claimants' Verbal Communications*

■ With these considerations in mind, the court determines that the appropriate scope of relevance is any profiles, postings, or messages (including status updates, wall comments, causes joined, groups joined, activity streams, blog entries) and SNS applications for claimants Zupan and Strahl for the period from April 23, 2007, through the present that reveal, refer, or relate to any emotion, feeling, or mental state, as well as communications that reveal, refer, or relate to events that could reasonably be expected to produce a significant emotion, feeling, or mental state.

#### 2. *Third-party Communications*

■ Third-party communications to Ms. Zupan and Ms. Strahl must be produced if they place these claimants' own communications in context.

#### 3. *Photographs and Videos*

■ The parties have also raised the production of photographs depicting each of the claimants or the pictures posted on their profiles in which they do not appear as an issue distinct from the disclosure of communications. The same test set forth above can be used to determine whether particular pictures should be produced. For example, pictures of the claimant taken during the relevant time period and posted on a claimant's profile will generally be discoverable because the context of the picture and the claimant's appearance may reveal the claimant's emotional or mental status. On the other hand, a picture posted on a third party's profile in

which a claimant is merely "tagged," [3] is less likely to be relevant. In general, a picture or video depicting someone other than the claimant is unlikely to fall within the definition set out above. These are general guidelines provided for the parties' reference and not final determinations of what pictures must be produced consistent with the guidelines above.

### C. Further Considerations

#### 1. *Carrying Out this Order*

The court's determination of relevant material is crafted to capture all arguably relevant materials, in accord with the liberal discovery standard of Rule 26. In carrying out this Order, the EEOC should err in favor of production.

■ The court acknowledges that it has not drawn these lines with the precision litigants and their counsel typically seek. But the difficulty of drawing sharp lines of relevance is not a difficulty unique to the subject matter of this litigation or to social networking communications. Lawyers are frequently called upon to make judgment calls—in good faith and consistent with their obligations as officers of the court—about what information is responsive to another party's discovery requests. Discovery is intended to be a self-regulating process that depends on the reasonableness and cooperation of counsel. Fed.R.Civ.P. 37(a)(1). Here, in the first instance, the EEOC's counsel will make those determinations based on the guidelines the court has provided. As with discovery generally, Simply Storage can further inquire of counsel and the claimants (in their depositions) about what has and has not been produced and can challenge the production if it believes the production falls short of the requirements of this order. Nothing in this Order is intended to foreclose such follow-up procedures. Moreover, this Order does not prevent Simply Storage from seeking additional materials should discovery suggest they are probative of a claim or defense.

**3.** "Tagging" is the process by which a third party posts a picture and links people in the picture to their profiles so that the picture will appear in the profiles of the person who "tagged" the people in the picture, as well as on the profiles of the people who were identified in the picture.

### 2. *Limitations of this Order*

This Order is directed toward two claimants who have alleged severe emotional distress, including post-traumatic stress disorder; it does not address the proper scope of discovery for "garden variety emotional distress claims." Production of the information required by this Order also obviously does not preclude objections to admissibility at a later stage or requests for return of produced materials if the litigation develops in a direction that casts doubt on its relevance.

### 3. *Privacy Concerns*

The court agrees with the EEOC that broad discovery of the claimants' SNS could reveal private information that may embarrass them. Other courts have observed, however, that this is the inevitable result of alleging these sorts of injuries. Further, the court finds that this concern is outweighed by the fact that the production here would be of information that the claimants have already shared with at least one other person through private messages or a larger number of people through postings. As one judge observed, "Facebook is not used as a means by which account holders carry on monologues with themselves." *Leduc*, 2009 CanLII 6838, at ¶ 31. The court has entered an agreed protective order that limits disclosure of certain discovery materials, and counsel should confer about whether that protection is appropriate here.

### Information about Prior Employment

 Although the parties' first dispute concerning SNS communication production is novel, the second dispute is straightforward, as is its resolution. This court has already determined that defendants must demonstrate why past work history information is relevant to the particular claims and defenses in that case to receive production of this information. *See Woods v. Fresenius Med. Care Group of N. Amer.*, 2008 WL 151836 (S.D.Ind. Jan.16, 2008). Simply Storage's assertion that it needs this information to determine the extent of the claimants' prior training on sexual harassment issues is not plausible. Its particular requests—dates of employment, positions held, and reason for leaving—are not directed at that issue at all.

Simply Storage has not shown how the requested employment information is relevant to its defenses in this case. Absent that showing, the EEOC is not required to produce the requested information about the claimants' prior employment.

### *Conclusion*

The EEOC must produce relevant SNS communications for Ms. Zupan and Ms. Strahl consistent with the guidelines explained above. It is not required to produce the requested information about the claimants' prior employment, without a further showing of relevance.

So ORDERED.

