Margaret HOLTER, Plaintiff,

v.

**WELLS FARGO AND COMPANY,**
Defendant.

No. 0:10–cv–04247 (JRT/JSM).

United States District Court,
D. Minnesota.

May 4, 2011.

Christopher D. Jozwiak, Phillip M. Kitzer, Halunen & Associates, Minneapolis, MN, for Plaintiff.

Ashley A. Wenger, Patrick R. Martin, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Minneapolis, MN, for Defendant.

## MEMORANDUM

JANIE S. MAYERON, United States Magistrate Judge.

### A. *Motion to Compel Medical Information, Authorizations and Records*

This case arises out of plaintiff's claims of disability discrimination and failure to accommodate under the Minnesota Human Rights Act ("MHRA") against defendant. *See* Complaint, ¶¶ 23–33. Plaintiff alleged that she has suffered from impairments, in the form of anxiety and depression, since 1993. *Id.*, ¶ 7. Plaintiff represented that she is seeking $300,000 in emotional distress damages from defendant ($150,000 past damage and $150,000 in future damages). *See* Declaration of Patrick R. Martin in Support of Defendant Wells Fargo's Memorandum in Support of its Motion to Compel ("Martin Decl."), Ex. N (Rule 26 Initial Disclosures). Defendant seeks discovery concerning plaintiff's physical and mental health history for a period of ten years (1991–2011) years via Interrogatory Nos. 4 and 5, and has requested that plaintiff sign authorizations releasing all of her medical and mental health records to defendant. Defendant's interrogatories and plaintiff's responses are as follows:

**INTERROGATORY NO. 4:** Do you claim mental anguish, emotional distress, pain and suffering, and/or physical injury in this lawsuit? If your answer to this interrogatory is in the affirmative, identify every medical care provider, physician, clinic, hospital, treatment center, counseling facility, holistic medicine facility, and/or rehabilitation facility with whom or with which you have ever consulted, sought, and/or obtained mental, emotional, or physical consultation, examination, care, or treatment of any kind at any time in your life, including but not limited to those from whom you have sought treatment for the depression, anxiety, and/or other health issues you allege in this lawsuit. If medical records are not available, for each such medical care provider, physician, clinic, hospital, treatment center, counseling facility, holistic medicine facility, and/or rehabilitation facility for which no record is available, provide detail regarding each visit or session, including information such

as: the name, address, and telephone number of the provider, facility, and/or professional; the condition for which you sought consultation, examination, care, or treatment; the date(s) of each such consultation, examination, care or treatment; the diagnosis and prognosis given at each such visit or session; and the treatment received, including medication and/or hospitalization. If your answer to this interrogatory is in the affirmative, please also fill out, execute, and provide an Authorization to Release Medical Information form served herewith for each healthcare provider identified in your answer.

**Response:** Plaintiff objects to this interrogatory to the extent that it is overly broad and unduly burdensome. Plaintiff also objects to this interrogatory to the extent that it seeks information protected by the medical privilege. Plaintiff further objects to this interrogatory to the extent it seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections, Plaintiff will supplement her response upon execution of a mutually agreeable confidentiality agreement. Discovery is continuing.

**INTERROGATORY NO. 5:** Set forth in detail each and every fact and identify all documents and witnesses that support or refute the allegations contained in your Complaint that, during your employment with Defendant, you suffered from depression, anxiety, and/or other health issues. In answering this Interrogatory, please provide the following information: the specific condition(s) you suffered; when you suffered the conditions(s); any and all. diagnoses, treatments, medical care, and/or medications you received or underwent due to the same; all medical reports and records pertaining to the same; and the identity of all healthcare providers from whom you sought treatment for the same.

**Response:** Plaintiff objects to this interrogatory to the extent that it is overly broad and unduly burdensome. Plaintiff also objects to this interrogatory as it seeks information that is not reasonably calculated to lead to the discovery of ad-

missible evidence and is protected by medical privilege. Without waiving said objections, Plaintiff will supplement her answer upon execution of a mutually agreeable confidentiality agreement. Discovery is continuing.

*Id.,* Ex. D.

The proposed authorization propounded by defendant provided in relevant part:

I, the undersigned, do hereby authorize the above named care provider to release any and all information relating to me, to communicate with and to permit Ogletree, Deakins, Nash, Smoak & Stewart, P.C., or any agent or employee thereof, to obtain, inspect, and copy any *medical record or records of my condition or treatment, including but not limited to reports, treatment for alcohol or drug abuse, physical therapy, nutrition, occupational rehabilitation, mental health, psychologists, prosthesis, and psychiatric records, and films of diagnostic imaging such as x-rays, CT scans, MRIs, etc., while a patient of or under treatment by said care provider,* and I further authorize said care provider to permit Ogletree, Deakins, Nash, Smoak & Stewart, P.C., or any agent or employee thereof, to obtain and make copies of all such records.

(Emphasis added).

Defendant argued that it is entitled to plaintiff's medical records because she has placed her mental, physical and emotional health in controversy, including her claims that she is disabled based on her mental impairments and her allegations that she suffered $300,000 [1] of damages for her emotional distress as the result of defendant's actions. *See* Defendant Wells Fargo's Memorandum of Law in Support of its Motion to Compel ("Def.'s Mem."), pp. 7–8. Plaintiff countered that she has not placed her physical health in controversy, and her garden-variety emotional distress claim does not open the door for defendant to have unfettered access to her entire medical file for the last twenty years.

*See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Compel ("Pl.'s Mem."), pp. 7–9. Plaintiff offered to produce mental health records for a period of time beginning three years prior to when she began taking medications for her depression and anxiety through her termination in May 2007. *Id.,* p. 8.

The discoverability of medical records is governed by the relevancy standard of Rule 26 of the Federal Rules of Civil Procedure, and not the "in controversy" standard required for an independent medical examination ("IME") under Rule 35. *See Schlagenhauf v. Holder,* 379 U.S. 104, 117, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964) ("[I]n none of the other discovery provisions is there a restriction that the matter be 'in controversy,' and only in Rule 34 is there Rule 35's requirement that the movant affirmatively demonstrate 'good cause.'"); [2] *Schoffstall v. Henderson,* 223 F.3d 818, 823 (8th Cir.2000) (finding that employee's claim of sex discrimination and emotional distress placed her medical condition at issue, making her medical records relevant, and, absent a showing of bad faith, discoverable); *Sandoval v. American Bldg. Maintenance Industries, Inc.,* 267 F.R.D. 257, 268–69 (D.Minn.2007); *Schaadt v. St. Jude Medical,* Civil No. 05–1167 (RHK/JSM), at 9–10 (D.Minn. April 4, 2006) [Docket No. 36] (Mayeron, M.J.), *aff'd,* May 5, 2006 Order [Docket No. 55] (Kyle, J.) (finding that even if a plaintiffs' physical or mental conditions were not "in controversy," for the purposes of Rule 35, medical records were still relevant under Rule 26 where a significant source of a plaintiffs' damages were based on her claim of emotional distress).

Here, plaintiff, as part of her disability claim, is alleging that she is suffering from an impairment involving mental illness dating back to 1993. In addition, a significant source of plaintiff's damages arise out of the alleged emotional distress caused by defendant. For all of these reasons, this Court

---

1. This Court notes that plaintiff has asserted in her answers to interrogatories that she suffered $200,000 in emotional distress damages ($100,000 in past damages and $100,000 in future damages). *See* Martin Decl., Ex. D (Int. No. 10).

2. In fact, since 1970, the "good cause" standard was removed from Rule 34. *See* Fed.R.Civ.P. 34 advisory committee's note (1970).

holds that defendant is entitled to discover information sought by Interrogatory Nos. 4 and 5 bearing on the diagnosis or treatment for any mental, emotional and psychological issues from 1993, the date she first was diagnosed with anxiety and depression, to the present. Similarly, defendant is entitled to obtain plaintiff's medical records for the same time period regarding the diagnosis or treatment for any mental, emotional and psychological issues. Therefore, on or before **May 10, 2011,** plaintiff shall respond to Interrogatory Nos. 4 and 5 consistent with this Order and sign medical authorizations that conform with Exhibit A attached to this Order.[3] However, defendant is not entitled to records concerning plaintiff's physical health, as this information has no bearing on her claims in the present case.

### B. *Request for Social Media*

Defendant requested the following discovery seeking social media content from plaintiff:

**INTERROGATORY NO. 14:** Identify any and all social media sites in which you have participated and/or established a profile for from November 1992 to the present, including but not limited to Facebook, MySpace, LinkedIn, and YouTube. If your answer to this Interrogatory is in the affirmative, please provide your login name, password, and profile information for each site.

**Response:** Plaintiff objects to this interrogatory as vague, overly broad, unduly burdensome, harassing, and invasive; Plaintiff further objects to the extent this request seeks information that is neither relevant, nor likely to lead to the discovery of admissible evidence.

**REQUEST NO. 34:** An electronic copy of Plaintiffs complete Facebook history, including any and all profile information, postings, pictures, and data available pursuant to Facebook's "Download Your Own Information" feature.

**Response:** Plaintiff objects to this request as vague, overly broad, unduly burden-

some, harassing, and invasive. Plaintiff further objects to the extent this request seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.

**REQUEST NO. 35:** An electronic copy of any social media sites identified by Plaintiff in her answer to Interrogatory No. 14, including but not limited to all updates, changes, or modifications of Plaintiffs profile, any photographs or videos posted by Plaintiff or anyone on Plaintiffs behalf, all status updates, messages, wall comments, causes joined, groups joined, quizzes taken, activity streams, blog entries, details, blurbs, comments, and applications for the period from November 1992 to the present. Please provide an electronic copy of this information, or a hard copy to the extent an electronic copy is not available.

**Response:** Plaintiff objects to this request as vague, overly broad, unduly burdensome, harassing, and invasive. Plaintiff further objects to the extent this request seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.

*See* Martin Decl., Ex. D.

Defendant argued that because plaintiff has placed her mental and emotional health at issue in this case, the discovery seeking social media content, including her profiles, postings, pictures, and quizzes, should be captured by plaintiff and provided to defendant for its review. *See* Def.'s Mem., p. 11. Plaintiff asserted that complete and unrestrained access to her Facebook account or any other social media is not warranted where the information sought is not relevant in any way to her disability claims, is not pertinent to her request for garden-variety emotional distress damages, and amounts to harassment. *See* Pl.'s Mem., pp. 9–10.

■ At the hearing, this Court indicated that it was granting defendant's motion in part, concluding that it was entitled to obtain relevant information from plaintiff's social media sites bearing on liability and damages.

---

**3.** The parties should note that as part of the revisions made by this Court to defendant's proposed medical authorization, the language per-

mitting the bearer of the authorization to have conversations with plaintiff's physicians was removed.

In reaching this decision, the Court finds the discussion and rationale set forth in *EEOC v. Simply Storage Management*, 270 F.R.D. 430 (S.D.Ind.2010) to be both helpful and persuasive. On the one hand, that court recognized "the simple fact that a claimant has had social communications is not necessarily probative of the particular mental and emotional health matters at issue in the case. Rather, it must be the substance of the communication that determines relevance." *Id.* at 435 (citation omitted). While everything that is posted on a social media website is arguably reflective of a person's emotional state. This Court would not allow depositions of every friend and acquaintance to inquire about every conversation and interaction with plaintiff. So too, the Court will not require plaintiff to produce all information from all her social media websites to obtain similar information. *See Rozell v. Ross-Holst*, No. 05 Civ. 2936(JGK)JCF, 2006 WL 163143 at *3 (S.D.N.Y. Jan. 20, 2006) ("To be sure, anything that a person says or does might in some theoretical sense be reflective of her emotional state. But that is hardly justification for requiring the production of every thought she may have reduced to writing or, indeed, the deposition of everyone she may have talked to.").

On the other hand, given that plaintiff has placed her employment with and termination of employment from defendant, along with her mental disability and emotional state at issue, the defendant is entitled to information from her social media websites that bear on these topics, including other stressors in plaintiff's life that could account for the emotional distress she is now claiming was due to her treatment at and termination of employment from defendant. *See Simply Storage Management*, 270 F.R.D. at 435 (citation omitted). Therefore, plaintiff's counsel shall review all of plaintiff's social media content for the period of April 2005 (the date she alleges her problems with Wells Fargo began) to the present, and produce any content or communications that reveals or refers to: (1) any emotion, feeling or mental state, including but not limited to any reference of depression, anxiety or mental disability; (2) to any events that could reasonably be expected to produce a significant emotion, feel-

ing, or mental state; (3) defendant, plaintiff's employment at defendant or termination of employment from defendant; and (4) plaintiff's search for employment following her termination of employment from defendant. Plaintiff will not be required to provide defendant with any passwords or user names to any social websites, so that defendant can conduct its own search and review. Just as the Court would not give defendant the ability to come into plaintiff's home or peruse her computer to search for possible relevant information, the Court will not allow defendant to review social media content to determine what it deems is relevant. As the *Simply Storage* court aptly observed:

> The court acknowledges that it has not drawn these lines with the precision litigants and their counsel typically seek. But the difficulty of drawing sharp lines of relevance is not a difficulty unique to the subject matter of this litigation or to social networking communications. Lawyers are frequently called upon to make judgment calls-in good faith and consistent with their obligations as officers of the court-about what information is responsive to another party's discovery requests. Discovery is intended to be a self-regulating process that depends on the reasonableness and cooperation of counsel. Fed.R.Civ.P. 37(a)(1). Here, in the first instance, the EEOC's counsel will make those determinations based on the guidelines the court has provided. As with discovery generally, Simply Storage can further inquire of counsel and the claimants (in their depositions) about what has and has not been produced and can challenge the production if it believes the production falls short of the requirements of this order. Nothing in this Order is intended to foreclose such follow-up procedures. Moreover, this Order does not prevent Simply Storage from seeking additional materials should discovery suggest they are probative of a claim or defense.

*Id.* at 436. The Court trusts that plaintiff's counsel, as an officer of the Court, will review social media content and communications and produce any relevant information.

Plaintiff shall produce to defendant all responsive social media content and communications on or before **May 20, 2011.**

### C.  *Employment Records*

Defendant propounded the following discovery on plaintiff, which it claimed supports its assertion that she was terminated for incompetence and her inability to get along with her co-workers, is relevant to the issue of mitigation of damages, and will provide relevant discovery on whether plaintiff was materially limited in a major life activity:

**INTERROGATORY NO. 22:** Describe completely and in detail all employment (including self-employment) held by you during the past 20 years (before, after, and during your employment with Defendant), including but not limited to providing the following for each job held: the name and address of the employer; the dates of employment; the position(s) that you held at such employment; the job description for each position; the compensation that you received or are receiving in such employment (including your annual, monthly, weekly and/or hourly salary or wages, insurance benefits, pension benefits, vacation pay or benefits available, sick leave, authorized use of credit cards, overtime pay, holiday pay, income from any pension, profit-sharing, or annuity plan, etc.); the name of your supervisor(s); and if, when, why, and how your employment ended. Please also fill out, execute, and provide copies of the Authorization to Release Employment Information form served herewith for each such employer.

**Response:** Plaintiff objects to this interrogatory to the extent that it is overly broad, harassing, and that it seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections, Plaintiff responds as follows:

- University of Minnesota, 1300 2nd Ave., Minneapolis, MN 55454. Plaintiff was employed as an executive accounts specialist from approximately October 2007 to approximately July 2010. Plaintiff earned $17.68 per hour. Plaintiff received medical and dental benefits, MN Retirement Account and accrued one vacation and one sick day a month. Plaintiff's Supervisor was Candice Kraemer. Plaintiff's was laid off due to a reduction in available work.

- Wells Fargo. Plaintiff was employed from approximately November 1992 through May 5, 2007. Defendant is in possession and control of the information requested in this interrogatory.

- Gateway Foods. Plaintiff was employed by Gateway Foods from approximately from 1991–1992. Plaintiff's was laid off when Plaintiff's department moved to LaCrosse, WI. Discovery is continuing.

*See* Def.'s Mem., pp. 16–17; Martin Decl., Ex. D.

Defendant also asked plaintiff to sign an authorization allowing it to obtain all of plaintiff's employment records.

Plaintiff argued that her entire set of employment records are not relevant to her claims of discrimination or her purported disability, would not lead to discovery of admissible evidence as relates to her performance, and would merely allow defendant to go on a fishing expedition. *See* Pl.'s Mem., pp. 11–13.

■ The Court finds that plaintiff adequately answered Interrogatory No. 22 and therefore, defendant's motion to compel in this regard is denied. As for the employment records authorizations, the Court concludes that defendant's request for all employment records is overly broad. The Court will limit the authorization to records generated after her departure from defendant as follows:

I, the undersigned, do hereby authorize you to release the following documents and records you have regarding me to Ogletree, Deakins, Nash, Smoak & Stewart, P.C., or any representative or agent thereof.

Application for employment; offer of employment; employment agreement; documents reflecting my job performance including any achievements, commendations, attendance, and discipline; any work accommodations provided to me; reason(s)

for my departure from employment; summary of wages, salary or other compensation received by me; and summary of benefits received by me.[4]

Plaintiff shall provide the signed authorizations to defendant on or before **May 10, 2011.**

### D. *Education Records and Contention Interrogatories*

Defendant's motion to compel as it relates to Request No. 20 (seeking academic records), and Interrogatory Nos. 2 and 3, which are broad contention interrogatories, is denied for the reasons stated forth on the record at the hearing.

### ORDER

The above matter came on before the undersigned upon Defendant Wells Fargo's Motion to Compel [Docket No. 11]. Phillip M. Kitzer, Esq. appeared on behalf of plaintiff; Patrick R. Martin, Esq. appeared on behalf of defendant.

The Court, upon all of the files, records, proceedings herein, and for the reasons stated forth on the record at the hearing and in the Memorandum below, now makes and enters the following Order.

IT IS HEREBY ORDERED that:

Defendant Wells Fargo's Motion to Compel [Docket No. 11] is **GRANTED** in part and **DENIED** in part, as set forth in the following Memorandum.

### EXHIBIT A

### *AUTHORIZATION TO RELEASE MEDICAL INFORMATION*

TO: _____

_____

_____

RE: Margaret Holter
Social Security No.: _____
Birthdate: _____

I, the undersigned, do hereby authorize the above named care provider to release any and all information relating to me regarding

the diagnosis or treatment for any mental, emotional and psychological issues from 1993, to communicate with and to permit Ogletree, Deakins, Nash, Smoak & Stewart, P.C., or any agent or employee thereof, to obtain, inspect, and copy any medical record or records reflecting the diagnosis or treatment for any mental, emotional and psychological issues from 1993 to the present while a patient of or under treatment by said care provider, and I further authorize said care provider to permit Ogletree, Deakins, Nash, Smoak & Stewart, P.C., or any agent or employee thereof, to obtain and make copies of all such records.

This authorization specifically includes records prepared prior to the date of this authorization dating back to January 1, 1993 and records prepared after the date of this authorization during the pendency of this proceeding.

I understand that I may revoke this consent in writing at any time, except to the extent action has already been taken in reliance on it. I also understand that if the person or organization I authorize to receive the information is not a health plan or healthcare provider, the released information may no longer be protected by federal privacy regulations and could be re-disclosed. I further understand that my healthcare and payment for my healthcare will not be affected if I do not sign this release.

The information is needed for the following purpose: Litigation.

A photocopy of this authorization shall be deemed to be an original. Minnesota Statutes §§ 254A.09 and 144.335.

This authorization expires one year following the date of execution.

Dated: _____.

_____

Margaret Holter

Order as Exhibit B.

---

4. The entire authorization to release employment records to be used in this case is attached to this

*EXHIBIT B*

*AUTHORIZATION TO RELEASE*
*EMPLOYMENT INFORMATION*

TO: _____
_____
_____

RE: Margaret Holter
Social Security No.: _____
Birthdate: _____

I, the undersigned, do hereby authorize you to release the following documents and records you have regarding me to Ogletree, Deakins, Nash, Smoak & Stewart, P.C., or any representative or agent thereof.

  Application for employment; offer of employment; employment agreement; documents reflecting my job performance including any achievements, commendations, attendance, and discipline; any work accommodations provided to me; reason(s) for my departure from employment; summary of wages, salary or other compensation received by me; and summary of benefits received by me.

I authorize Ogletree, Deakins, Nash, Smoak & Stewart, P.C., or any representative or agent thereof, to have access to any records described above and in your possession, for the purpose of reviewing and photocopying any or all such records. This authorization is also intended to permit access to future records you may create or acquire that concern me.

I release any individual, including but not limited to your records custodians, from all liability for damages that may result to me on account of compliance or any attempts to comply with this authorization.

I agree that a photocopy of this authorization shall be accepted with the same authority as the original.

Dated: _____.

_____
Margaret Holter

